1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KENNETH BASH,<br><br>Defendant. | No.  1:20-cr-00238-NONE-SKO-1<br><br><br>ORDER DENYING DEFENDANT'S<br>MOTIONS TO SUPPRESS AND TO DISMISS<br><br>(Doc. Nos. 189, 195) |

17    Presently before the court are defendant Kenneth Bash's motions to suppress evidence and

18  dismiss multiplicitous conspiracy counts.  (Doc. Nos. 189, 195.)  A hearing on those motions was

19  held on June 24, 2021, at which time the motions were taken under submission for decision.

20  Assistant U.S. Attorney Stephanie Stokman appeared at the hearing on behalf of the United States

21  and W. Scott Quinlan appeared on behalf of defendant.  Having reviewed the parties' briefing and

22  heard their arguments, for the reasons set forth below, defendant's motions will be denied.

23                                                    **BACKGROUND**

24    Before and during the pendency of this action, defendant has been incarcerated at Salinas

25  Valley State Prison.  (Doc. No. 189 at 3.)  On July 27, 2020, a California Department of

26  Corrections and Rehabilitation ("CDCR") officer observed defendant walking out of his cell with

27  a black iPhone 7 in his hand and seized the cellphone.  (Attach. 2, Quinlan Decl., Doc. No. 190-2

28  at 2.)  A forensic download of the cellphone was subsequently conducted by a California

1    Highway Patrol ("CHP") officer assigned to the California Department of Justice, Fresno

2    Regional Office, High Impact Investigation Team.  (*Id.*)

3         On August 11, 2020, Special Agent Anthony Gonzales from the United States Bureau of

4    Alcohol, Tobacco, Firearms and Explosives submitted an application for a federal warrant

5    authorizing the search of the contents extracted from the cellphone.  (*Id.* at 3; *see also* Attach. 1,

6    Quinlan Decl., Doc. No. 190-1 (sealed).)  In his affidavit in support of his search warrant

7    application, Special Agent Gonzales stated that the forensic download was completed in good

8    faith, he had not reviewed the contents of that download, and no references to those contents were

9    made in his warrant application.  (*See* Attach. 1, Quinlan Decl., Doc. No. 190-1 at 11 n.4

10   (sealed).)  The reviewing magistrate judge signed the search warrant on the same day, identifying

11   the that the item to be searched was the black iPhone 7 and authorizing the search of all records

12   on that phone "that include evidence of the commission of the offense described below,

13   contraband, the fruits of crime, and things otherwise criminally possessed and property designed

14   or intended for use in, or which is or has been used as the means of committing, 21 U.S.C. §§

15   846, 841 (Conspiracy to Possess with the Intent to Distribute Controlled Substances) and 18

16   U.S.C. § 1961(1) and § 1962 (RICO conspiracy) . . ."  (Attach. 1, Quinlan Decl., Doc. No. 190-1

17   at 21–26 (sealed).)  The USB drive containing the original forensic download of the cellphone

18   was then forwarded to an investigative team and the contents of that download were searched and

19   subsequently used in support of a wiretap application submitted to a judge of the Fresno County

20   Superior Court as part of the overall investigation.  (Attach. 2, Quinlan Decl., Doc. No. 190-2 at

21   3; Doc. No. 189 at 5; *see also* Attach. 3, Quinlan Decl., Doc. No. 190-3 (affidavit in support of

22   wiretap application).)

23        On December 10, 2020, the grand jury for the Eastern District of California returned an

24   indictment in this action charging defendant Bash with the following:

25        COUNT ONE: 21 U.S.C. §§ 846, 841(a)(1) & (b)(1)(A) –
           Conspiracy to Distribute and to Possess with Intent to Distribute
26         Methamphetamine

27        The Grand Jury further charges: THAT

28

KENNETH BASH,
STEPHANIE MADSEN,
JAMES ARMSTRONG, AND
SAMANTHA BOOTH,

defendants herein, between on or about September 1, 2020, and continuing through on or about October 1, 2020, in the County of Fresno, State and Eastern District of California, and elsewhere, did knowingly and intentionally conspire and agree with each other and with persons known and unknown to the Grand Jury to distribute and to possess with intent to distribute at least 50 grams of methamphetamine (actual), and 500 grams or more of a mixture or substance containing methamphetamine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Sections 846 and 841(a)(1) & (b)(1)(A).

. . .

COUNT THREE: 21 U.S.C. §§ 846, 841(a)(1) & (b)(1)(A), (b)(1)(B) – Conspiracy to Distribute and to Possess with Intent to Distribute Methamphetamine and Heroin

The Grand Jury further charges: THAT

KENNETH BASH,
STEPHANIE MADSEN,
TODD MORGAN,
MARLON PALMER, AND
JOSEPH MCWILLIAMS,

defendants herein, between on or about September 1, 2020, and continuing through on or about September 25, 2020, in the County of Fresno, State and Eastern District of California, and elsewhere, did knowingly and intentionally conspire and agree with each other and with persons known and unknown to the Grand Jury to distribute and to possess with intent to distribute at least 50 grams of methamphetamine (actual), and 500 grams or more of a mixture or substance containing methamphetamine, a Schedule II Controlled Substance, and at least 100 grams or more of a mixture or substance containing heroin, a Schedule I Controlled Substance, in violation of Title 21, United States Code, Sections 846 and 841(a)(1) & (b)(1)(A), (b)(1)(B).

. . .

COUNT TWELVE: 21 U.S.C. §§ 846, 841(a)(1) & (b)(1)(A) – Conspiracy to Distribute and to Possess with Intent to Distribute Methamphetamine

The Grand Jury further charges: THAT

KENNETH BASH,
STEPHANIE MADSEN,
TODD MORGAN,
JACOB RENSHAW,

3

1

AMANDA GOURLEY, AND
BROCK LARSON,

2

3    defendants herein, between on or about September 20, 2020, and
     continuing through on or about November 19, 2020, in the County
     of Fresno, State and Eastern District of California, Montana, and
4    elsewhere, did knowingly and intentionally conspire and agree with
     each other and with persons known and unknown to the Grand Jury
5    to distribute and to possess with intent to distribute at least 50 grams
     of methamphetamine (actual), and 500 grams or more of a mixture
6    or substance containing methamphetamine, a Schedule II Controlled
     Substance, in violation of Title 21, United States Code, Sections 846
7    and 841(a)(1) & (b)(1)(A).

8    . . .

9    COUNT FOURTEEN: 21 U.S.C. §§ 846, 841(a)(1) – Conspiracy to
     Distribute and to Possess with Intent to Distribute Methamphetamine
10   and Heroin

11   The Grand Jury further charges: THAT

12

KENNETH BASH,
STEPHANIE MADSEN,
13   TODD MORGAN, AND
JAMES ARMSTRONG,

14

15   defendants herein, between on or about September 1, 2020, and
     continuing through on or about November 19, 2020, in the County
16   of Fresno, State and Eastern District of California, and elsewhere,
     did knowingly and intentionally conspire and agree with each other
     and with persons known and unknown to the Grand Jury to distribute
17   and to possess with intent to distribute a mixture or substance
     containing methamphetamine, a Schedule II Controlled Substance,
18   and a mixture or substance containing heroin, a Schedule I
     Controlled Substance, in violation of Title 21, United States Code,
19   Sections 846 and 841(a)(1).

20   (Doc. No. 130 at 1–2, 2–3, 7, 8.)  In his pending motions defendant Bash moves to suppress the

21   evidence seized from his cellphone (i.e. the downloaded contents of that phone) and moves to

22   require an election by the government and to dismiss what he contends are the multiplicitous

23   conspiracy counts of the indictment brought against him.  (Doc. Nos. 189, 190, 194, 195, 198.)

24   The government has opposed both motions (Doc. Nos. 199, 200), and defendant has replied (Doc.

25   Nos. 201, 208).  Defendant also requests the court take judicial notice of two documents in

26   support of his motion to suppress.  (Doc. Nos. 203, 204.)

27   /////

28   /////

4

1    **ANALYSIS**

2    **A.      Motion to Suppress the Forensic Download of the Cellphone Contents**

3            Defendant moves to suppress the forensic download of his cellphone's contents, arguing

4    that law enforcement "had no right to search or seize the contents of that phone without a search

5    warrant."  (Doc. No. 201 at 3.)  In other words, defendant claims that the officers should not have

6    downloaded any contents from the phone until a search warrant was issued or, alternatively, "the

7    government, armed with a search warrant to search the cell phone, should have obtained a new

8    forensic download, and searched that untainted download."  (*Id.* at 7.)  Because the forensic

9    download by was completed by a CHP officer before the issuance of the federal search warrant,

10   defendant maintains that the download was tainted and thus any evidence obtained from that

11   original download should be suppressed as fruit of the poisonous tree.  (Doc. No. 189 at 6.)

12           The government first argues that defendant lacks standing to seek suppression of evidence

13   based on an alleged violation of the Fourth Amendment because he has no reasonable expectation

14   of privacy in the cellphone's contents given that defendant was incarcerated in state prison and

15   prohibited from possessing a cellphone due to that status.  (Doc. No. 199 at 4.)  Alternatively, the

16   government asserts that a valid federal search warrant was in fact issued for the cellphone's

17   contents.  As for the CHP officer downloading those contents from the phone before a search

18   warrant was issued, the government argues that "[t]he download of the phone prior to the warrant

19   being sought is inconsequential to the contents of the phone, which remain the same whether

20   downloaded one day or two weeks after the phone was recovered."  (*Id.* at 6–7.)

21           1.      Standing

22           A defendant bears the burden of establishing that he had a reasonable expectation of

23   privacy in the place being searched in order to establish standing to challenge a search or seizure

24   under the Fourth Amendment.  *See United States v. Reyes-Bosque*, 596 F.3d 1017, 1026 (9th Cir.

25   2010); *United States v. Caymen*, 404 F.3d 1196, 1199 (9th Cir. 2005); *see also Minn. v. Olson*,

26   495 U.S. 91, 95–96 (1990) ("[I]t has been the law that 'capacity to claim protection of the Fourth

27   Amendment depends . . . upon whether the person who claims the protection of the Amendment

28   has a legitimate expectation of privacy in the invaded place.'") (quoting *Rakas v. Ill.*, 439 U.S.

128, 143 (1978)).  Likewise, a defendant "can prevail on a 'fruit of the poisonous tree' claim only if he has standing regarding the violation which constitutes the poisonous tree."  6 W. LaFave, *Search and Seizure* § 11.4 (6th ed. 2020); *see also United States v. Baker*, 256 F.3d 855, 863 (9th Cir. 2001) (rejecting a defendant's challenge to the validity of a search warrant on the basis that evidence tainted by the unlawful search of his companion's purse was included in the affidavit supporting the issuance of the warrant based upon the defendant's lack of standing).

Moreover, "[i]t is well settled that prisoners have no reasonable expectation of privacy in the belongings they keep with them."  *United States v. Huart*, 735 F.3d 972, 975 (7th Cir. 2013); *see also Hudson v. Palmer*, 468 U.S. 517, 526 (1984) ("[T]he Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell.").  California prisoners are prohibited from possessing a cellphone and thus defendant Bash cannot claim to have had a reasonable expectation of privacy in the contents of the contraband cellphone which he possessed in violation of the law.  *See* Cal. Penal Code § 4576; *Hayes v. Cal. Dep't of Corr. & Rehab.*, Case No. 2:19-cv-09513-SVW (SK), 2020 WL 3963882, at *2 (C.D. Cal. Apr. 28, 2020) ("Plaintiff has no Fourth Amendment right to prevent a prison search of the contents of his contraband phone without a warrant.") (citing *Hudson*, 468 U.S. at 524).  Because defendant Bash lacks standing to challenge the search of his contraband cellphone under the Fourth Amendment, his motion to suppress the fruits of the search of the cellphone's contents must be denied.   In the undersigned's view, this straightforward analysis is dispositive of the pending motion to suppress evidence.  Nonetheless, the court will address the remaining arguments advanced by defendant Bash in support of that motion below.

　　　　2.　　Search Warrant

Defendant Bash contends that "while law enforcement had the right to seize his cell phone from him because he was a prisoner, they had no right to search or seize the contents of that phone without a search warrant."  (Doc. No. 201 at 3.)  In making this argument, he relies, in part, on the Supreme Court's decision in *Riley v. California*, 573 U.S. 373 (2014), in which the court held that a search warrant is generally required before officers can conduct a search of a cellphone's contents.  *Id.* at 401 ("Our holding, of course, is not that the information on a cell

1  phone is immune from search; it is instead that a warrant is generally required before such a

2  search, even when a cell phone is seized incident to arrest.").  However, the holding in *Riley* does

3  not support defendant's motion to suppress here because it involved a warrantless search incident

4  to arrest, not the search of a prisoner's contraband cellphone.  *See United States v. Bare*, 806 F.3d

5  1011, 1018 n.4 (9th Cir. 2015) (rejecting the defendant's reliance on *Riley* on grounds that a

6  defendant on supervised release "does not warrant the same level of protection as arrestees

7  because—as a convicted federal prisoner still serving a portion of his sentence—his Fourth

8  Amendment rights are diminished.") (citing *Hudson*, 468 U.S. at 524); *see also Hayes*, 2020 WL

9  3963882 at \*2 ("Plaintiff cannot rely on *Riley* [citation omitted], because *Riley* has nothing to do

10  with prisoners having contraband phones.").

11        Defendant also heavily relies on a recent Ninth Circuit decision in which that court

12  affirmed the denial of a parolee's motion to suppress evidence seized during a search of the

13  forensic images from his cell phones. *United States v. Peterson*, 995 F.3d 1061, 1063, 1068–69

14  (9th Cir. 2021).  In that case the parolee, as a condition of his release, had "consent[ed] to

15  announced or unannounced examination and/or search of electronic devices to which [he had]

16  access for the limited purpose of detecting content prohibited by [the] conditions of parole."

17  *Peterson*, 995 F.3d at 1063 (alterations in original).  The assigned parole agent on two separate

18  occasions had discovered cellphones in the parolee's possession, seized those phones, and

19  "delivered them to federal agents at Homeland Security Investigations (HSI) to conduct forensic

20  searches of images on the phones."  *Id.*  After each warrantless parole search, but before the

21  forensic searches of the cellphones were conducted, the parolee's parole was revoked.  *Id.*  The

22  parolee "moved to suppress the evidence found during the forensic searches of the phones,"

23  which the government did not oppose because a CDCR officer had interpreted Policy No.

24  81034.5 of the CDCR's operation manual to provide that "once parole was revoked, a warrant

25  was required to search items seized during a warrantless parole search."  *Id.*  Accordingly, the

26  district court suppressed the evidence obtained by HSI from the cellphone searches.  *Id.* at 1064.

27  Subsequently, the government applied for a warrant to search both cellphones supported by an

28  affidavit that "specifically informed the court of the prior forensic search of the phones and

1    affirmed that no information from that search was used in the application." *Id.* The district court

2    issued the search warrant and, afterwards, the cellphones were "reanalyzed utilizing previously

3    captured forensic images." *Id.* The parolee again moved to suppress the contents obtained from

4    his cellphones, "argu[ing] that his parole conditions did not 'unambiguously encompass' cell

5    phones" and "that the illegal seizure of cell phones during the parole searches required

6    suppression of evidence obtained from the parole searches and evidence obtained from HSI's

7    forensic searches pursuant to the warrant." *Id.* This time, however, the district court denied the

8    motion to suppress. *Id.*

9         On appeal, the parolee argued, in part, that "the warrantless seizure of his cell phones

10   during the parole searches required suppression of the forensic evidence subsequently obtained by

11   warrant." *Id.* at 1068. Recognizing that the parolee had diminished privacy interests and that he

12   had consented to searches of his electronic devices, the Ninth Circuit concluded that the parole

13   searches were constitutionally permissible. *Id.* To the extent the parolee argued that the

14   government should have made new forensic images from the cellphone after the issuance of the

15   search warrant or that the previously captured forensic images had been suppressed in light of the

16   government's non-opposition to his motion to suppress, the Ninth Circuit found that the parolee

17   had waived this argument by failing to raise it before the district court. *Id.*

18        Defendant Bash argues that based on the decision in *Peterson*, the contents of his

19   cellphone could not be either forensically downloaded or searched without a warrant. (Doc. No.

20   201 at 7.) The undersigned is not persuaded by this argument because *Peterson* is not directly on

21   point. First, unlike defendant Bash, who was incarcerated in state prison at the time of the search

22   and was specifically prohibited from possessing the contraband cellphone in question, the parolee

23   in *Peterson* was allowed to possess electronic devices subject to search conditions. *See Peterson*,

24   995 F.3d at 1068 ("'[S]tatus as a parolee significantly diminishes one's privacy interests' and that

25   parolees 'hold the most limited privacy interests among people convicted of a crime but [who] are

26   not actually imprisoned.'") (quoting *United States v. Johnson*, 875 F.3d 1265, 1273, 1275 (9th

27   Cir. 2017)).

28   /////

8

1    Second, defendant Bash focuses on the government's non-opposition to the parolee's first

2    motion to suppress in *Peterson,* which non-opposition was based on a CDCR indication that a

3    search warrant was likely needed to search the parolee's cellphones if the search was to be

4    conducted *after* his parole was revoked under CDCR policy.  (*See* Doc. No. 201 at 7.)  However,

5    as in the present case, in *Peterson* the government subsequently applied for and the court issued a

6    warrant to search the contents of the cellphones.  As defendant recognizes, the Ninth Circuit in

7    *Peterson* did not reach the issue of whether the forensic images should have been download anew

8    prior to the search because that argument had not been presented below and had thus been

9    waived.  *Peterson*, 995 F.3d at 1068.  Nonetheless, the Ninth Circuit did observe that "[a]ny

10   illegality in the initial seizure of forensic images from [the parolee's] cell phones was cured by

11   the subsequent issuance of a warrant to search the forensic images from cell phones that were

12   legally seized from [the parolee] as the result of valid parole searches." *Id*. at 1068–69.[1]  Finally,

13   the affidavits in support of the search warrant applications in *Peterson* and in this case both

14   informed the court that a prior forensic download of the cellphones' contents had been completed

15   and that no information from those downloads was referenced in the warrant applications.

16   Finally, although defendant recognizes that California state prison inmates do not have a

17   reasonable expectation of privacy in their contraband items, he nevertheless argues that California

18   has enacted statutes and regulations requiring the issuance of a search warrant authorizing the

19   search of the contents of a prisoner's contraband cellphone.  In this regard, defendant cites

20   California Penal Code § 4756(e), which provides that "[t]he department [CDCR] shall not access

21   data or communications that have been captured using available technology from unauthorized

22   use of a wireless communication device except after obtaining a valid search warrant."  However,

23   this provision of California law does not support defendant's motion to suppress since federal

24   agents in this case did in fact obtain a search warrant prior to reviewing the forensic download of

25   the contraband cellphone's contents.  Defendant Bash has not cited any court decision that has

26   _____

27   [1]  In affirming the denial of the defendant's motion to suppress the Ninth Circuit also noted that
     "[h]ad Peterson raised this argument below, the district court could have ruled on this factual
28   dispute in the first instance, and if necessary, the asserted error could have been corrected by
     obtaining new forensic images of the phones." *Peterson*, 995 F.3d at 1068.

1  required a new forensic download of a seized contraband cellphone's contents after a search

2  warrant is issued.[2]

3      In short, because he was incarcerated in state prison and not allowed to possess a

4  contraband cellphone, defendant has failed to establish that he had a reasonable expectation of

5  privacy in the contents of that contraband cellphone.  Regardless of his lack of standing to

6  challenge the search of the contraband cellphone, federal agents obtained a valid warrant to

7  search the contents of the cellphone, which cured any taint even if the initial download of that

8  phone's contents by state law enforcement officers were to be found unlawful.  Accordingly,

9  defendant Bash's motion to suppress the fruits of that search must be denied.[3]

10  **B.    *Franks* Hearing**

11      Next, defendant moves for an evidentiary hearing under *Franks v. Delaware*, 438 U.S.

12  154 (1978), in order to establish:  (1) the nature and extent of the forensic download conducted on

13  the contraband cellphone prior to the search warrant application being submitted and (2) that

14  Special Agent Gonzales knew at the time he submitted his application for the issuance of a search

15  warrant that a warrant was required before the cellphone's contents where downloaded.  (Doc.

16  No. 201 at 12.)  Additionally, defendant contends that, although Agent Gonzales represented to

17  the issuing magistrate judge that he did not review the cellphone's contents and that the forensic

18

19  [2]  Defendant requests the court take judicial notice of two separate policies set forth in the CDCR
Operations Manual.  (Doc. Nos. 203, 204.)  First, defendant cites policy number 81035.5, which
20  discusses parole searches of electronic devices.  (Attach. 1, Doc. No. 203-1 at 7.)  However,
defendant is incarcerated and as such is not allowed to possess a cellphone, and thus this policy
21  does not apply to him.  Second, defendant cites CDCR policy number 54030.12.2 for the
proposition that "California prison inmates retain property interests in unauthorized personal
22  property, which includes their cell phones."  (Doc. No. 204 at 2; *see* Attach. 1, Doc. No. 204-1 at
2.)  The policy cited by defendant in this regard discusses disposal of unauthorized inmate
23  personal property.  Although California state prison inmates may indicate or agree as to how that
unauthorized property will be disposed of, the policy has nothing to do with the searching of that
24  property by prison officials nor does it confer any possessory interest on the part of inmates in
contraband property.  Thus, while the court will take notice of the CDCR policies cited by
25  defendant, it concludes they are irrelevant in resolving the pending motion.

26
[3]  In light of this conclusion, the court finds it unnecessary to address the government's separate
27  argument that it is permitted under California Penal Code § 1546.1(c)(8) to access electronic
device information from contraband cellphones possessed by inmates without a warrant.  (*See*
28  Doc. No. 199 at 5–6.)

1  download of the cellphone was done in good faith, Agent Gonzales "deliberately or recklessly

2  concealed" from the magistrate judge that he would not perform a new download of the

3  cellphone's contents and instead intended to search what defendant contends was the "already

4  tainted" original download.  (*Id.*)

5        The government opposes defendant's *Franks* hearing request on grounds that "[d]efendant

6  has not provided any specific statements that were omitted or misstated as to mislead the

7  Magistrate Judge from authorizing the search warrant," nor has he "provide[d] information that

8  these statements were made intentionally or recklessly."  (Doc. No. 199 at 7.)  The court agrees

9  with the government.

10        "A defendant is entitled to an evidentiary hearing if he 'makes a substantial preliminary

11  showing that a false statement knowingly and intentionally, or with reckless disregard for the

12  truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is

13  necessary to the finding of probable cause.'"  *United States v. Craighead*, 539 F.3d 1073, 1080–

14  81 (9th Cir. 2008) (quoting *Franks*, 438 U.S. at 155–56); *see also United States v. Flyer*, 633 F.3d

15  911, 916 (9th Cir. 2011); *United States v. Bennett*, 219 F.3d 1117, 1124 (9th Cir. 2000); *United

16  States v. Johns*, 851 F.2d 1131, 1133 (9th Cir. 1988).  Therefore, in order to be entitled to an

17  evidentiary hearing, a defendant must come forward with specific allegations, allege a deliberate

18  falsehood or reckless disregard for the truth, and support that claim with a sufficient offer of

19  proof.  *Craighead*, 539 F.3d at 1080 (citing *United States v. Kiser*, 716 F.2d 1268, 1271 (9th Cir.

20  1983)).  Where such a substantial preliminary showing is made, "the court must hold a hearing to

21  determine if any false statements deliberately or recklessly included in the affidavit were material

22  to the magistrate's finding of probable cause."[4]  *Johns*, 851 F.2d at 1133 (quoting *United States v.

23  Burnes*, 816 F.2d 1354, 1357 (9th Cir. 1987)); *see also United States v. Stanert*, 762 F.2d 775,

24  780 (9th Cir. 1985), *as amended*, 769 F.2d 1410 (9th Cir. 1985).

25  _____

26  [4]  Affirmative misrepresentations in a search warrant affidavit are material if probable cause is
    lacking absent consideration of the misrepresented facts.  *Crowe v. Cnty. of San Diego*, 608 F.3d
27  406, 435 (9th Cir. 2010) (citing *Franks*, 438 U.S. at 171–72).  A misrepresentation based on an
    omission is material where the inclusion of the omitted facts would "cast doubt on the existence
28  of probable cause."  *Id.* (quoting *United States v. Garza*, 980 F.2d 546, 551 (9th Cir. 1992)).

1    Here, defendant has not identified any false statement in or omission of material

2  information from the federal search warrant affidavit.  Indeed, the court pressed defense counsel

3  at the hearing as to where in the search warrant application the allegedly false statement appeared

4  or where that affidavit omitted material information, but counsel was unable to identify anything

5  concrete or specific in response to that inquiry.  Instead, defendant Bash merely asserts that the

6  search warrant affidavit was misleading because it failed to state that a search warrant was

7  required before the cellphone's contents could be downloaded and it did not say the original

8  download of the cellphone's contents was what federal agents would search pursuant to the

9  warrant.  (Doc. No. 201 at 12.)  However, the magistrate judge was clearly informed by the

10  affidavit that a forensic download of the cellphone's contents had already been completed and

11  Agent Gonzales reported in the affidavit that he had not yet reviewed the contents of that

12  download nor did he make any reference to those contents in his warrant application.[5]

13  Ultimately, defendant has simply failed to make any showing that the search warrant affidavit

14  included false statements or omitted facts, let alone any substantial preliminary showing that any

15  such false statements or omissions were material to the probable cause determination.

16    Having failed to make the substantial preliminary showing required by *Franks*, defendant

17  is not entitled to an evidentiary hearing, nor has he established that any evidence obtained as a

18  result of the forensic download of the contraband cellphone's contents should be suppressed on

19  this basis.  *See United States v. Meling*, 47 F.3d 1546, 1553–56 (9th Cir. 1995); *see also United

20  States v. Yepiz*, 673 F. App'x. 691, 703 (9th Cir. 2016) (affirming the denial of an evidentiary

21  hearing under *Franks* do to the failure to make a substantial preliminary showing in support of the

22  /////

23  /////

24  /////

25  ---

[5]  Having been informed by the affiant that the forensic download of the contents of the cellphone
26  had already been completed (Doc. No. 190-1 at 11 and n.4), had the reviewing magistrate
perceived any conceivable issue with the search of that download, the magistrate could have
27  specified that a download of the contents been done anew and that the authorized search be
conducted on that download.  *See* fn. 1, above.  The reviewing magistrate judge did not do so and
28  instead authorized the search of the cellphone as requested in the application.

12

1   motion).[6]  Accordingly, defendant Bash's request for a *Franks* hearing will be denied as will his

2   motion to suppress evidence on that ground.

3   **C.     Motion to Dismiss Multiplicitous Conspiracy Counts**

4          Defendant also moves the court for "an order compelling an election of Count 14 among

5   conspiracy charges filed against him and dismissing all multiplicitous conspiracy charges [Counts

6   1, 3, 12] to the elected conspiracy charge."  (Doc. No. 195 at 1.)  He argues that all four

7   conspiracy counts alleged in the indictment involve overlapping time periods, take place in

8   Fresno County and elsewhere, and involve a conspiracy to violate the same statutes, all of which

9   is encompassed within the conspiracy charged in Count 14 of the indictment.  (*Id.* at 2, 5.)  The

10  government opposes the motion for election, contending that despite some potential overlap, each

11  of the four conspiracies charged in the indictment at least involves different co-conspirators and

12  separate time periods.  (Doc. No. 200 at 5–6.)  Furthermore, the government argues that "despite

13  methamphetamine being the main controlled substance that defendant was conspiring to

14  distribute, there are separate and distinct quantities of methamphetamine in each count, and in

15  two of the four counts, separate and distinct quantities of heroin, obtained from different sources

16  during separate time periods."  (*Id.* at 6.)

17         "An indictment is multiplicitous if it charges a single offense in more than one count."

18  *United States v. Awad*, 551 F.3d 930, 937 (9th Cir. 2009) (citation omitted).  For example,

19  multiplicity can occur if a single criminal conspiracy is divided into multiple violations of one

20  conspiracy statute.  *See United States v. Smith*, 424 F.3d 992, 1000 (2005).  The Ninth Circuit

21  "has adopted a 'factor analysis' to determine whether [the] conspiracy counts charging violation

22  of the same statute charge the same offense and so place the defendant in double jeopardy."

23  *United States v. Guzman*, 852, 1117, 1120 (9th Cir. 1988).  The five factors to be considered are:

24  "(1) the differences in the periods of time covered by the alleged conspiracies; (2) the places

25  where the conspiracies were alleged to occur; (3) the persons charged as coconspirators; (4) the

26  overt acts alleged to have been committed; and (5) the statutes alleged to have been violated."

27  _____

28  [6]  Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule
    36-3(b).

1    *Smith*, 424 F.3d at 1000 (citing *Arnold v. United States*, 336 F.2d 347, 350 (9th Cir. 1964); *United*

2    *States v. Stoddard*, 111 F.3d 1450, 1454 (9th Cir. 1997)).  It is important to recognize that

3    multiplicity is not fatal and does not require dismissal of the indictment.  1A Charles Alan Wright

4    & Arthur Miller, *Federal Practice and Procedure* § 146 (5th ed. 2021).  Instead, "[w]here counts

5    of an indictment are found to be multiplicitous, the court in its discretion may require election

6    either before trial or after trial before imposition of sentence."  *United States v. Mohsen*, No. CR.

7    03-0095 WBS, 2005 WL 8160186, at *2 (N.D. Cal. Dec. 22, 2005); *see also United States v.*

8    *Robinson*, 651 F.2d 1188, 1194 (6th Cir. 1981) (stating that a defendant may move to require the

9    prosecution to elect between the charges in a particular count or may seek an appropriate jury

10   instruction).

11        Based on the allegations of the indictment in this case, the court cannot make a final

12   determination at this time as to whether Counts 1, 3, 12, and 14 charge the same conspiracy or

13   four different conspiracies.[7]  Although each of those counts alleges a different time period and

14   charges different co-conspirators, the statutes alleged to have been violated are the same, there are

15   overlapping time periods among the counts, and the locations of each conspiracy are largely the

16   same.  *See, e.g.*, *United States v. Cutting*, Case Nos. 14-cr-00139-SI-1, 17-cr-00137 SI, 2017 WL

17   3394167, at *1–2 (N.D. Cal. Aug. 8, 2017) (denying a defendant's motion to dismiss

18   multiplicitous conspiracy counts without prejudice on grounds that "the Court cannot determine

19   solely based upon the allegations of the indictments that Counts 1 and 10 charge the same

20   /////

21

22   [7]  To the extent defendant challenges the sufficiency of the indictment (*see* Doc. No. 208 at 2), the
     Ninth Circuit has held that "[a]n indictment under 21 U.S.C. § 846 . . . is sufficient if it alleges:  a
23   conspiracy to distribute drugs, the time during which the conspiracy was operative and the statute
     allegedly violated, even if it fails to allege or prove any specific overt act in furtherance of the
24   conspiracy."  *United States v. Forrester*, 616 F.3d 929, 940 (9th Cir. 2010) (citation omitted and
     alterations in original).  Here, the indictment provides the requisite information and because the
25   government is not required to prove overt acts, the indictment is thus sufficient.  *See United*
     *States v. Shabani*, 513 U.S. 10, 15 (1994); *see also United States v. Ortiz*, No. 15-CR-00594-RS-
26   1, 2016 WL 4239370, at *4 (N.D. Cal. Aug. 11, 2016) ("[A]s the Government need not prove the
     commission of any overt acts in furtherance of the conspiracy to convict [defendant] of violating
27   21 U.S.C. § 846, it need not include overt acts in the indictment.") (internal quotation marks
     omitted).
28

                                                    14

1   conspiracy.").  Accordingly, the court denies defendant's motion to dismiss without prejudice to

2   its renewal based upon a more complete record developed at trial or otherwise.

3                                    **CONCLUSION**

4        For the foregoing reasons,

5        1.  Defendant's motion to suppress (Doc. No. 189) is DENIED;

6        2.  Defendant's request for an evidentiary hearing and to suppress evidence under *Franks*

7   *v. Delaware* (Doc. No. 189) is DENIED;

8        3.  Defendant's motion to dismiss multiplicitous conspiracy counts (Doc. No. 195) is

9   DENIED without prejudice; and

10       4.  The case remains scheduled for status conference before the assigned magistrate judge

11  on October 20, 2021 at 1:00 p.m. in Courtroom 7.

12  IT IS SO ORDERED.

13      Dated:   __**July 28, 2021**__                _____

14                                                    UNITED STATES DISTRICT JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28