UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KENNETH BASH, *et al.*,<br><br>Defendants. | No. 1:20-cr-00238-NONE-SKO<br><br>ORDER DENYING MOTION TO SUPPRESS AND REQUEST FOR A *FRANKS* HEARING<br><br>(Doc Nos. 211, 221) |

**INTRODUCTION**

Defendant Kenneth Bash ("defendant") moves to suppress evidence obtained against him pursuant to several state court authorized wiretaps. (Doc. Nos. 211, 221.) Several of Bash's co-defendants have joined in his motion to suppress evidence.[1] The government opposed the motion on October 8, 2021, (Doc. No. 245), and defendant Bash submitted a reply on October 14, 2021. (Doc. No. 255.) A hearing was held with respect to the motion by District Judge Dale A. Drozd on November 19, 2021. (Doc. No. 265.)[2]

/////

---

[1] Defendants Amanda Gourley, Joseph McWilliams, Marlon Palmer, Jacob Renshaw, Brock Larson, Stephanie Madsen, and Todd Morgan joined in defendant Bash's motion to suppress evidence. (*See* Doc. Nos. 224, 225, 230, 231, 232, 236, and 238.)

[2] The undersigned heard argument on this motion, is therefore familiar with the facts and legal arguments relevant to its resolution and is therefore issuing this order. It is anticipated that the entire case will, thereafter, be reassigned to U.S. District Judge Jennifer L. Thurston.

1

**BACKGROUND**

In January 2020, the Multi Agency Gang Enforcement Consortium ("MAGEC") began investigating members of the criminal street gang known as the "Fresnecks," who were suspected of committing crimes in support of, or on behalf of, the Aryan Brotherhood, a white, race based California prison gang.  (Doc. No. 245 at 40.)  Other agencies joined in that investigation, including the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), the Federal Bureau of Investigation ("FBI"), the California Department of Corrections and Rehabilitation ("CDCR"), and the California Department of Justice ("DOJ").  In September 2020, those law enforcement agencies had launched an extensive investigation into the Fresnecks and Aryan Brotherhood, which involved the use of wiretaps authorized by both federal and state courts.

The first federal and first state wiretap interceptions conducted in connection with the investigation began on September 16, 2020.[3]  Over the following two months, law enforcement officers sought and obtained court authorization for approximately 49 spinoff wiretaps and renewals of previously authorized wiretaps and used the evidence acquired as a result to arrest and charge numerous alleged members and associates of the Aryan Brotherhood and Fresneck gangs for racketeering activity, drug distribution, and other crimes.  (Doc. No. 256 at 2–3.)  Defendant Kenneth Bash was one of the targets of these wiretaps while he was a prisoner at California's Salinas Valley State Prison, and he is now facing charges in this case of two counts (Counts One and Twelve) of conspiring to distribute and possess with intent to distribute 50 grams or more of actual methamphetamine and 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 846 and 841, as well as two separate counts (Counts Three and Fourteen) of conspiring to distribute and possess

/////

/////

/////

---

[3] The state wiretaps placed at issue by the pending motion were authorized by Fresno County Superior Court Judge A. Harrell on September 16, 2020 (Order 20-017), September 18, 2020 (Order 20-018), and September 21, 2020 (Order 20-019).

2

with the intent to distribute methamphetamine and heroin in violation of 21 U.S.C. §§ 846 and 841.  (Doc. No. 130.)[4]

Although somewhat unclear,[5] Defendant Bash and his joining co-defendants appear to move for suppression of evidence obtained via the first three[6] state court issued wiretaps on the grounds that the affidavits in support of those applications omitted crucial details regarding two informants that, according to the defendants, could have been used by law enforcement to investigate and prosecute the alleged drug distribution operation without the need for a wiretap authorization.  (Doc. No. 221 at 12-28.)  Specifically, in moving to suppress the evidence discovered as a result of the challenged wiretaps, counsel for defendant Bash asserts that it was known to law enforcement during their investigation that Bash had expressed his willingness to carry out the sale of a quarter-pound of methamphetamine to an ATF informant.  Nonetheless, according to defendant Bash, the government chose not to pursue conducting that drug transaction and did not disclose this ATF informant to the state court judge who authorized the first state wiretap.  (*Id*. at 18.)  Defendant Bash also asserts that the FBI had a confidential source it could have utilized to arrange unlawful drug transactions with Bash, but it did not do so and also did not disclose that fact to the authorizing state court judge.

---

[4] In one of the latter two conspiracy counts (Count Three) it is alleged that the charged conspiracy involved 50 grams or more of actual methamphetamine and 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine and 100 grams or more of a mixture or substance containing heroin.

[5] The court has struggled with the briefing submitted by the parties in connection with the pending motion, finding it at times to be unfocused and unhelpful.  As a result, although the arguments at the hearing were somewhat more focused, it is still unclear to some extent the grounds upon which the defense seeks suppression of the wiretap evidence.  The court has addressed the grounds it has distilled from what has been presented to it.  To the extent that the pending motion to suppress includes an argument that the search of defendant Bash's contraband cellphone in prison was unlawful, the court has already rejected that argument.  (Doc. No. 223.)  To the extent any defense contention is not addressed in this order, it is because it was not adequately presented, and the court's ruling is therefore without prejudice to the filing of a more precise motion.

[6] Defendant Bash has stated that the purported deficiencies in these first three wiretap applications tainted the subsequent wiretap authorizations, a subject which he will address in a subsequent motion if appropriate.  (Doc. No. 221 at 1.)

Defendant Bash argues that because these omissions from the affidavit submitted in support of the challenged wiretap applications were material to the reviewing judge's determination that the requisite necessity[7] for the issuance of wiretap authorization had been established, the defense is entitled to a *Franks* hearing in order to demonstrate that those omissions from the wiretap affidavit were reckless and/or intentional. *See Franks v. Delaware*, 438 U.S. 154 (1978). The government opposes the motion to suppress as well as the defense request for a *Franks* hearing on the ground that both informants described by the defense in the pending motion were in fact disclosed in the state wiretap application and affidavit in support thereof, identified there respectively as CI-8 and CI-5.

## LEGAL STANDARD

At the outset, the court notes that in this federal criminal prosecution, defendant Bash's pending motion to suppress evidence challenges state court issued wiretap authorizations. As one district court in this circuit has explained:

> The Ninth Circuit has held that federal law governs the admissibility of wiretap evidence. "Evidence obtained pursuant to a state court wiretap authorization is not subject to suppression in federal court if that evidence was obtained in compliance with federal law." *United States v. Homick*, 964 F.2d 899, 903 (9th Cir. 1992) (citing *United States v. Chavez–Vernaza*, 844 F.2d 1368, 1372 (9th Cir. 1987)). Therefore, although the validity of the wiretap is governed by both federal and state law, it will only be suppressed if it was obtained in violation of federal law. *Id.*; *see also Chavez–Vernaza*, 844 F.2d at 1373 ("[W]e have consistently stated that the admissibility of evidence obtained in violation of state law turns on whether a federal right has been infringed, not on the presence or absence of federal involvement at the evidence-gathering stage of an investigation"); *United States v. Hall*, 543 F.2d 1229, 1235 (9th Cir. 1976)

---

[7] Under federal law,

> To establish that a wiretap is necessary, the application must provide a "full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c). The issuing judge must then determine whether "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(3)(c).

*United States v. Shryock*, 342 F.3d 948, 975 (9th Cir. 2003). This is often referred to as the "requisite necessity" requirement.

4

> ("[W]iretap evidence obtained in violation of neither the Constitution nor federal law is admissible in federal courts, even though obtained in violation of state law ... "). Accordingly, the challenged wiretap applications—both state and federal—are subject to the federal law.

*United States v. Palafox*, No. 2:16-cr-00265-GMN-CWH, 2019 WL 2079748, at *5 (D. Nev. May 10, 2019).

A contention that an affidavit submitted in support of a wiretap application included false information or omitted facts that were material to the issuance of the wiretap authorization, whether related to probable cause or the requisite necessity for using a wiretap, provides a viable basis for suppression of evidence, if established. As the Ninth Circuit has held:

> A district court must suppress evidence seized pursuant to a wiretap if the defendant can show the wiretap application contained intentionally or recklessly false information that was material to the finding of probable cause. *See United States v. Leon*, 468 U.S. 897, 923, 104 S. Ct. 3405, 3420–21, 82 L.Ed.2d 677 (1984). A criminal defendant is entitled to a hearing to test the veracity of an affidavit supporting the application under *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L.Ed.2d 667 (1978), if he can make a substantial preliminary showing that "the affidavit contain[ed] intentionally or recklessly false statements, and ... [that] the affidavit purged of its falsities would not be sufficient to support a finding of probable cause." *United States v. Lefkowitz*, 618 F.2d 1313, 1317 (9th Cir.1980). *Franks* applies to omissions as well as false statements. *Stanert*, 762 F.2d at 781.

*United States v. Meling*, 47 F.3d 1546, 1553 (9th Cir. 1995).

The standards applicable to such a challenge brought under *Franks* are well-established and apply in the context of wiretap authorizations just as where a search warrant is at issue. Under those standards, "[a] defendant is entitled to an evidentiary hearing if he 'makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause.'" *United States v. Craighead*, 539 F.3d 1073, 1080–81 (9th Cir. 2008) (quoting *Franks*, 438 U.S. at 155–56)); *see also United States v. Flyer,* 633 F.3d 911, 916 (9th Cir. 2011); *United States v. Chavez Miranda*, 306 F.3d 973, 979 (9th Cir. 2002) (A defendant "bears the burden of proof and must make a

/////

5

substantial showing to support both elements.")[8]; *United States v. Bennett*, 219 F.3d 1117, 1124 (9th Cir. 2000); *United States v. Johns*, 851 F.2d 1131, 1133 (9th Cir. 1988).

Therefore, in order to be entitled to an evidentiary hearing, a defendant must come forward with specific allegations, allege a deliberate falsehood or reckless disregard for the truth, and support that claim with a sufficient offer of proof. *Craighead*, 539 F.3d at 1080 (citing *United States v. Kiser*, 716 F.2d 1268, 1271 (9th Cir. 1983)); *see also* Franks, 438 U.S. at 171 ("To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross examine."); *United States v. Prime*, 363 F.3d 1028, 1031 n.1 (9th Cir. 2004) ("In order to receive a *Franks* hearing, the defendant must make a non-conclusory and substantial preliminary showing that the affidavit contained actual falsity [or an omission], and that the falsity either was deliberate or resulted from reckless disregard for the truth.") (internal quotations omitted). Where such a substantial preliminary showing is made, "the court must hold a hearing to determine if any false statements [or omissions] deliberately or recklessly included in the affidavit were material to the magistrate's finding of probable cause." *Johns*, 851 F.2d at 1133 (quoting *United States v. Burnes*, 816 F.2d 1354, 1357 (9th Cir. 1987*)); see also United States v. Stanert*, 762 F.2d 775, 780 (9th Cir. 1985), *as amended*, 769 F.2d 1410 (9th Cir. 1985); *Chavez Miranda*, 306 F.3d at 979.

## ANALYSIS

As previously noted, defendant Bash contends that a *Franks* hearing is necessary because the government knew of, but did not utilize or disclose in its wiretap application affidavits, two informants that could have been used as traditional means to further the investigation.

1. The ATF Informant

With respect to the ATF informant whom the defense contends had an opportunity to engage in a quarter pound of methamphetamine transaction with defendant Bash, the defense has not met its burden of making a substantial preliminary showing of an omission from the

---

[8] If the defendant fails to make a "substantial preliminary showing" with respect to either intentional or reckless inclusion or omission, or materiality, the district court should not conduct a *Franks* hearing. *See Shryock*, 342 F.3d at 976–77.

supporting affidavit. Rather, the documents submitted to the court in connection with the pending motion establish that the ATF informant referred to by the defense is in fact the same informant disclosed to the reviewing state court judge in the wiretap application as "CI-8".

As noted above, in moving to suppress the wiretap evidence, counsel on behalf of defendant Bash contends that Bash had expressed a willingness to sell a quarter pound of methamphetamine to an ATF informant ("ATF CI"), but the government never pursued conducting that drug transaction and did not inform the reviewing state court judge of these facts or of this informant in the 20-017 wiretap application. As evidence of this informant/potential drug transaction, the defense points to discovery it has received from the government designated as Bates-stamp numbers 9701–9702 and/or Doc. No. 222 at 388–89. The document relied upon by the defense in support of this assertion is a summary of a May 22, 2020 meeting between ATF Special Agent Anthony Gonzales, Fresno Police Department Detective Cary Phelps, and a confidential informant ("CI"). That document reflects at that meeting the CI "agreed to make a recorded phone call to Kenneth BASH." (Doc. No. 222 at 388.) The summary of this meeting explains that the CI did not have defendant Bash's phone number, so the CI "began making phone calls to people who may have a current phone number" for Bash. (*Id*.) Ashley Hoffman, a co-defendant in this case, provided a phone number for Bash and told the CI not to tell Bash where the CI got the number because Bash "had recently switched phones to avoid law enforcement detection." (*Id*.) After calling the number and being directed to Bash's voicemail, the CI "sent a text message to BASH that he wanted to speak with him." (*Id*.)

While waiting for defendant Bash to reply to the message left, the CI called Justin Reasoner who had been identified as a pound-level methamphetamine dealer who was "in a favorable position with both BASH and EVERSOLE."[9] (*Id*.) The CI told Reasoner that they were trying to contact Eversole to pay Eversole money that he was owed. (*Id*.) Reasoner and the CI discussed methamphetamine prices being "sky high," and Reasoner told the CI he would

---

[9] Robert Eversole, referenced several times in the affidavit in support of the wiretap applications, was another target of the overall investigation. Eversole is alleged to be an Aryan Brotherhood associate who was incarcerated at North Kern State Prison during the time this investigation was being conducted. (Doc. 245 at 40.)

contact Eversole for the CI.  (*Id*. at 389.)

Soon thereafter, Bash responded to the CI's text message and invited the CI to call him. (*Id*.)  When the CI called him back, Bash immediately asked who provided the CI with Bash's current phone number.  (*Id*.)  Bash stated that he had "been through three phones in a month." (*Id*.)  The CI asked if Bash could "set him/her up so he/she could make money" and explained that he/she owed money to Eversole but that he/she had an extra $500.  (*Id*.)  Bash told the CI that he could "probably get a 'qp'[10] for $900" and that Bash would sell the quarter pound of methamphetamine to the CI if Bash was able to obtain the drugs.  (*Id*.)

The affidavit in support of the first state wiretap application contains a description of a conversation very similar to this conversation regarding a "quarter pound" of methamphetamine which the defense claims was not revealed to the judge reviewing that application.  (Doc. No. 222 at 471.)  Specifically, the affidavit in support of the state wiretap application reported that a CI, identified as CI-8 in the affidavit, was an "associate of Kenneth Bash, Derek Smith, Sarah Booth, Ashley Hoffman, and Justin Reasoner" who, in May 2020, "made recorded phone calls to Kenneth Bash, Ashley Hoffman, and Justin Reasoner" in which CI-8 asked whether he/she could do "work" for the gang "to both make himself/herself money and to make money for the gang." (Doc. No. 222 at 471.)  These details provided in the affidavit for wiretap authorization are entirely consistent with those of the May 2020 phone call described by the defense in which a then-unidentified CI discussed purchasing a quarter pound of methamphetamine from defendant Bash.

In another section of the state wiretap affidavit, CI-8 is described as someone who completed a recorded phone call in May 2020 but was considered to be an inactive CI by law enforcement because the investigative team has not been able to contact CI-8 since the May 2020

/////

/////

/////

---

[10] In the context of this conversation, the court understands the reference to "qp" to be shorthand for "quarter pound."

8

phone call had been placed. (Doc. No. 222 at 528–529.)[11] It is true that the supporting affidavit did not describe the phone conversation between Bash and CI-8 as one in which Bash offered to sell CI-8 a quarter pound of methamphetamine if he was able to obtain it, as the call summary notes upon which the defense relies do. However, the affidavit nonetheless made it clear to the reviewing state court judge that any such law-enforcement-monitored drug transaction between Bash and CI-8 could not be successfully completed because the government had lost contact with CI-8 after the May 2020 phone call. (Doc. No. 222 at 528–29.)

Both the defense's description of the ATF CI telephone call and the discussion in the wiretap affidavit of CI-8 refer to a telephone call that took place in May 2020 with the same identified participants (defendant Bash, a CI, and defendants Reasoner and Hoffman) and both describe a conversation in which the CI told defendant Bash that the CI hoped to be given more work because the CI needed money. In short, it is clear that both the defense's showing in support of its motion and the affidavit submitted to the state court judge for review referred to the same conversation that took place in May 2020. Thus, the supporting affidavit *did* disclose to the reviewing judge the existence of the ATF informant, identified in the affidavit as "CI-8". This being the case, the defense has failed to meet its burden of making a substantial preliminary showing that the wiretap affidavit omitted any material fact with respect to this conversation or the existence of the ATF informant. Accordingly, because there was no omission, the defense motion to suppress evidence and request for a *Franks* hearing will be denied to the extent it is based on the May 2020 telephone call in which the ATF informant participated.

2. The FBI Confidential Source

Defendant Bash next claims that the FBI had an undisclosed confidential source (the "Bishop CI") that could have been used to arrange drug transactions with defendant Bash,

---

[11] In this portion of the affidavit, CRI-8 is described as someone who "completed a recorded phone call with Robert Eversole" and informed the investigative team that "Robert Eversole had contacted CRI-8 about doing more 'work'." However, at the hearing on the pending motion the government clarified that the reference here to "Eversole" was a typographical error, and the May 2020 recorded phone conversation was actually with defendant Bash. This clarification is supported by the affidavit's prior description of CI-8 and the May 2020 phone call with defendants Bash, Justin Reasoner, and Ashley Hoffman. (*See* Doc. No. 222 at 471.)

1   presumably rendering the use of a wiretap unnecessary. To support this assertion, the defense
2   cites to Bates-stamped discovery number 5380, or Doc. No. 222 at 385. This document, a report
3   of a phone conversation between law enforcement and the Bishop CI, makes no mention of
4   defendant Bash or any of his alleged associates. (*Id.*) According to this call summary, the Bishop
5   CI had "picked up a pound of methamphetamine in Kern County" and then traveled to Bishop,
6   California. (*Id.*) The Bishop CI was described as now being "de-facto in charge" of Bishop
7   because someone named "Bad News" had previously held that role but "kep[t] getting in trouble
8   with gambling and women." (*Id.*) The summary of this phone conversation reflects that the
9   Bishop CI described an instance when he had purchased methamphetamine from a Robert
10  Gonzalez, then went to meet a "clean-cut 'white guy' at a fenced in area in Bakersfield,
11  California." (*Id.*) According to the Bishop CI, at some point after this meeting, Gonzalez told the
12  Bishop CI that "the Caucasian male was a Kern County Sheriff's Deputy." (*Id.*)
13       The summary itself, however, does not provide any basis to believe that the Bishop CI
14  described in this telephone conversation was connected to defendant Bash in any way, nor does it
15  suggest that this Bishop CI could have been utilized by law enforcement to arrange drug
16  transactions with defendant Bash as the defense claims in the pending motion. Moreover, the
17  briefing submitted by defendant Bash does not provide any detail suggesting such a connection.
18  In other words, as to the Bishop CI, the defense has simply made no showing that the alleged
19  omission of any reference to this informant from the wiretap affidavit was "material" in any way
20  to the issuance of the wiretap authorization.[12]
21       In this context, an alleged omission is not "material" unless the supporting affidavit,
22  purged of its defects, would be insufficient to support a finding that there was a requisite
23  necessity to employ a wiretap under the circumstances. *Meling*, 47 F.3d at 1553. Here, the
24  discovery documents describing the Bishop CI do not suggest any connection between that CI

---

[12] The government argued at the hearing on the pending motion that the Bishop CI was disclosed to the state court judge in the initial wiretap application as "CI-5." It is unnecessary for this court to determine whether "CI-5" and the Bishop CI are the same individual because defendant Bash has failed to demonstrate that the alleged omission was material in any way to the granting of the wiretap authorization.

and Bash or his co-defendants. The defense has simply failed to make any showing that the Bishop CI could have been successfully utilized in the government's investigation, instead offering only the conclusory argument that the Bishop CI "could have been used to set up transactions with Mr. Bash." (Doc. No. 255 at 10).

Even assuming that the defense is correct that it was possible that law enforcement could have somehow utilized the Bishop CI to arrange drug transactions with defendant Bash, the affidavit submitted to the state court judge in support of the wiretap application sufficiently established that the use of informants in this investigation could not effectively "determine the full scope of a conspiracy" such that the use of wiretaps was necessary even if informants were available. *See United States v. Shryock*, 342 F.3d 948, 976 (9th Cir. 2003) (Concluding that the use of informants in the investigation did not undercut the necessity of a wiretap because infiltration by informants "could not possibly reveal the full nature and extent of the enterprise and its countless, and at times disjointed, criminal tentacles.") (citing *United States v. McGuire*, 307 F.3d 1192, 1196–99 (9th Cir. 2002) (holding that necessity existed despite the existence of informants because infiltration alone could not determine the scope of the conspiracy)); *see also United States v. Canales Gomez,* 358 F.3d 1221, 1227 (9th Cir. 2004) ("A judicially-imposed requirement that the government attempt to use all potential informants before securing a wiretap would be impractical and contrary to investigatory experience and the force of our precedent. The government need not prove that informants would be totally useless.").

Here, the affiant explained to the reviewing judge with adequate specificity why, in the detective's experience, the goals of the investigation had not and could not be accomplished through the use of the confidential informants or other traditional means of law enforcement investigation. (Doc. No. 222 at 523–531; see also Doc. No. 222 at 521–523, 531–568.)[13] Because the defense has failed to make a substantial preliminary showing that the alleged omission of reference to the Bishop CI from the wiretap affidavit was material, both defendant Bash's motion to suppress evidence obtained by the wiretaps as well as the request for a *Franks*

---

[13] This showing of requisite necessity was incorporated by reference into the subsequent affidavits in support of wiretap applications submitted in connection with this investigation.

hearing will also be denied to the extent it is based on this ground.

## CONCLUSION

For all of the reasons explained above, the defense request for a *Franks* hearing and motion to suppress evidence obtained as a result of the state court issued wiretaps (Doc. No. 221) is DENIED in its entirety.

IT IS SO ORDERED.

Dated: **April 1, 2022**

UNITED STATES DISTRICT JUDGE