UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KENNETH BASH, et al,<br><br>Defendants. | Case No.  1:20-CR-00238-JLT-SKO<br><br>ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS, REQUEST FOR A *FRANKS* HEARING, AND MOTION TO COMPEL<br><br>(Docs. 309, 321) |

Kenneth Bash moves to suppress evidence obtained against him pursuant to several wiretaps authorized by a Fresno County Superior Court judge. (Doc. 309.) In the alternative, Bash requests a *Franks* hearing. The government opposed the motion on July 22, 2022, (Doc. 345), and Bash submitted a reply. (Doc. 357). Bash also requests that the Court compel production of recorded phone calls involving Bash and a confidential informant. (Doc. 321.) For the reasons set forth below, Bash's motion to suppress and request for a *Franks* hearing are **DENIED**; the motion to compel is **DENIED AS MOOT** subsequent to parties' agreement during the hearing.

**BACKGROUND**

In January 2020, the Multi Agency Gang Enforcement Consortium ("MAGEC") began investigating members of the criminal street gang known as the "Fresnecks," who were suspected of committing crimes in support or on behalf of the Aryan Brotherhood ("AB"), a white, race-

1

based California prison gang. (Doc. No. 245 at 40.) Other agencies joined in that investigation, including the Bureau of Alcohol, Tobacco, Firearms, and Explosives, the Federal Bureau of Investigation, the California Department of Corrections and Rehabilitation, and the California Department of Justice.

The first federal and first state wiretap interceptions conducted in connection with the investigation began on September 16, 2020. Over the following two months, law enforcement officers sought and obtained court authorization for approximately 49 spinoff wiretaps and renewals of previously authorized wiretaps. Authorities used the evidence from these wiretaps to arrest and charge numerous alleged members and associates of the Aryan Brotherhood and Fresneck gangs for racketeering activity, drug distribution, and other crimes. (Doc. 245 at 10–12.) Defendant Kenneth Bash was targeted and intercepted by these wiretaps while he was a prisoner at California's Salinas Valley State Prison, and he is now facing charges in this case of two counts (Counts One and Twelve) of conspiring to distribute and possess with intent to distribute 50 grams or more of actual methamphetamine and 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 846 and 841, as well as two separate counts (Counts Three and Fourteen) of conspiring to distribute and possess with the intent to distribute methamphetamine and heroin in violation of 21 U.S.C. §§ 846 and 841. (Doc. 130.) A superseding indictment recently added charges of Conspiracy to Participate in a Racketeering Enterprise in violation of 18 U.S.C. 1962(d); Conspiracy to Commit Murder in Aid of Racketeering in violation of 18 U.S.C. § 1959(a)(5); and an additional charge for conspiring to distribute and possess with intent to distribute 50 grams or more of actual methamphetamine and 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 846 and 841. (*See* Doc. 374.)

Defendant Bash and several of his co-Defendants previously moved for a *Franks* hearing and suppression of evidence obtained from the first state wiretaps conducted in this case: wiretap numbers 20-017, 20-018, and 20-019, all authorized by Fresno County Superior Court Judge A. Harrell. (Docs. 215, 224, 225.) That motion was premised on the allegation that the application for wiretap 20-017—on which the subsequent wiretaps relied—failed to inform the state court of two confidential

informants that could have been utilized in place of or before the wiretaps. The motion was denied because the government had properly informed the state court of one informant, and the Defendants failed to establish the materiality of the second informant. (Doc. 284.)

After examining the briefing and nearly 500 pages of attachments, including the wiretap applications and supporting affidavits, the Court concluded that "the affidavit submitted to the state court judge in support of the wiretap application [for wiretap 20-017] sufficiently established that the use of informants in this investigation could not effectively 'determine the full scope of a conspiracy' such that the use of wiretaps was necessary even if informants were available." (*Id*. at 6–9, 11.) As such, the motion to suppress and request for a *Franks* hearing were both denied. (*Id*. at 12.)

The Court's prior order also raised concern with the briefing on the motion, which was "unfocused and unhelpful." (Doc. 284 at 3, n.5.) The Court invited Defendants to submit a more "precise motion" regarding any arguments for suppression not addressed in the order. (*Id*.) Bash subsequently filed the instant motion, again requesting suppression and a *Franks* hearing on the basis that the state wiretaps were not legally necessary. (Doc. 309.) Bash complains that the wiretap applications for 20-017, 20-018, and 20-019 contained material misrepresentations and otherwise do not meet the necessity requirement because traditional investigative methods were not sufficiently explored against the targets of wiretaps.

**STANDARD OF DECISION**

As discussed in the Court's prior order, federal law governs the admissibility of wiretap evidence. *See United States v. Bash*, No. 1-20-CR-00238-NONE-SKO, 2022 WL 992932, at *2 (E.D. Cal. Apr. 1, 2022) (discussing standard and citing cases). Title III of the Omnibus Crime Control and Safe Streets Act of 1968 ("Title III") governs the use of electronic surveillance. 18 U.S.C. § 2516(2) governs the validity of state-issued wiretap orders, like those found in this case. 18 U.S.C. §§ 2515 and 2518 address when wiretap evidence must be suppressed and how and when a defendant may move to suppress such wiretap evidence.

The authority conferred under Title III for law enforcement agencies to conduct electronic surveillance of suspected criminal activities "is not a blank check." *United States v. Garcia–Villalba*, 585 F.3d 1223, 1227 (9th Cir. 2009). The government must generally satisfy two

1   requirements before a district court will issue a wiretap order: probable cause and necessity.  *Id.*

2   Bash challenges only the necessity of the wiretaps at issue in this case.

3      "The government must show that every wiretap it seeks is necessary." *United States v.*

4   *Christie*, 825 F.3d 1048, 1066 (9th Cir. 2016).  Under 18 U.S.C. § 2518(1)(C), a wiretap

5   application must include a "full and complete statement" as to whether traditional investigative

6   procedures (1) have been tried and failed; (2) reasonably appear unlikely to succeed if tried; or (3)

7   are too dangerous to try. 18 U.S.C. § 2518(l)(c); *see also* 18 U.S.C. 2518(3)(c).  The district court

8   may authorize a wiretap order only if it determines on the basis of the facts submitted by the

9   government that "normal investigation procedures have been tried and have failed or reasonably

10  appear to be unlikely to succeed or are to be too dangerous." 18 U.S.C. § 2518(3)(c).  "Taken

11  together, §§ 2518(1)(C) and (3)(c) require a showing of necessity before a district court can issue

12  a wiretap order." *United States v. Carneiro*, 861 F.2d 1171, 1176 (9th Cir. 1988).  In addition to

13  determining whether the statutory requirements were met, a district court reviewing the validity

14  of a wiretap order must examine the application to see if it contained material misstatements or

15  omissions regarding the necessity of the wiretap.  *Carneiro*, 861 F.2d at 1176.  The purpose of

16  such requirements is "to ensure that wiretapping is not resorted to in situations where traditional

17  investigative techniques would suffice to expose the crime." *United States v. Blackmon*, 273 F.3d

18  1204, 1207 (9th Cir. 2001) (citations omitted).

19  **ANALYSIS**

20  **I.    Standing**

21     The government first argues that Defendant Bash lacks standing to challenge any of the

22  wiretaps because he was incarcerated during the period that his communications were being

23  intercepted, and the intercepted communications took place over a contraband cellular phone that

24  he possessed in prison.

25     *United States v. York* squarely addressed whether an inmate using a contraband cellphone

26  in California could suppress evidence or challenge a wiretap where his communications were

27  intercepted via wiretaps of his associates' telephones.  No. 1:16-CR-00069-LJO-SKO-11, 2017

28  WL 5068143, at *4 (E.D. Cal. Sept. 29, 2017).  In determining that the petitioning inmate did not

4

have proper standing, the court in *York* reasoned:

> The Fourth Amendment protects communications in which a person has a reasonable expectation of privacy. California Penal Code, Section 4576 prohibits a prisoner from possessing a cellular telephone. Therefore, [an inmate] could have no reasonable expectation of privacy in communications that took place over his contraband cellular telephone. *United States v. Huart*, 735 F.3d 972, 976 (7th Cir. 2013) (subject in halfway house following prison surrendered any expectation of privacy in the contents of his cell phone); *see also United States v. Rodriguez*, No. 13CR4514–BEN, 2015 WL 468358, at *1 (S.D. Cal. Feb. 3, 2015) ("No court has ruled that a prison inmate has a reasonable expectation of privacy for communications he makes by cellular telephone.").

*Id*.

Here, as in *York*, Bash argues that regardless of the Fourth Amendment, he has a statutory right to privacy under Title III of the Omnibus Crime Control and Safe Streets Act, which is not limited by his imprisonment. (Doc. 309 at 8–11.) Bash cites no authority directly on point contending that a defendant in custody should have standing under Title III, but instead opines on the general applicability of Title III within prisons and the fact that the two statutory exceptions used to justify wiretapping prisoner communications are inapplicable in this scenario. (Doc. 309 at 9, arguing that absent Congressional action, prisoners "remain within the definition of an 'aggrieved person' who may move to suppress wiretaps obtained outside of compliance with Title III.")

The Court rejects this argument in favor of the holdings in *York* and *Rodriguez*, which concluded that Title III does not apply to law enforcement interceptions of communications made on contraband prison cell phones. *Rodriguez*, 2015 WL 468358, at *4 ("It would be an ironic interpretation of the law to find that a prison inmate, who by virtue of his initial crime and conviction, when he is placed in a cellblock where he has no Fourth Amendment rights, and when he commits a further crime by obtaining and using a contraband cellular telephone, acquires a statutory right under Title III to be free from law enforcement eavesdropping, unless a Title III wiretap order is first obtained") (emphasis omitted).

**II.   Necessity**

Assuming for the sake of argument that Bash, using a contraband cell phone while

incarcerated, has any right to suppress evidence gained in violation of Title III, Bash has still failed show that the wiretaps were improper.

The Ninth Circuit describes the necessity analysis as a two-step approach. *United States v. Rodriguez*, 851 F.3d 931, 937 (9th Cir. 2017). First, the court reviews de novo whether the application contains a full and complete statement as to whether or not "other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." *Id*. at 938. If the wiretap application meets these requirements, the reviewing court determines whether the issuing court's finding of necessity was an abuse of discretion. *Id*.

### A. Wiretap 20-017

#### 1. Full and Complete Statement

Bash first argues that the affidavit for wiretap 20-017 mischaracterizes the relevance of prior investigative history as to Bash and his co-conspirators and therefore does not contain a "full and complete" statement as required by Title III.

Wiretap 20-017, the application for which was incorporated into subsequent applications, targeted the phones of co-Defendants Derek Smith, Stephanie Madsen, and Kristen Bash, all associates of Defendant Bash. The affidavit supporting wiretap 20-017 describes the investigation as one "into the Fresno based criminal street gang known as the 'Fresnecks' and its association and allegiance to associates and members of the Aryan Brotherhood street gang." (Doc. 222 at 462.) The investigation's purpose was broadly to disrupt the activities of the Fresneck gang, including allied cliques such as the Peckerwoods, Skinheads, and Dirty White Boys; ascertain the structure and organization of the Fresneck gang in Fresno County; and identify the locations and means by which Fresneck members and affiliates are committing felonies. (Doc. 222 at 404–406.) The application stated that, as part of this investigation, the government was pursuing a federal wiretap of phones belonging to several Aryan Brotherhood members and associates, including Robert Eversole, an inmate at another facility who was conducting drug and firearm trafficking on behalf of the Aryan Brotherhood.

The probable cause and necessity sections of the 20-017 affidavit describe prior

investigative efforts, including the use of confidential informants, related to Eversole and others connected to the Aryan Brotherhood, Fresnecks, and allied cliques. Bash argues that any investigative history related to Eversole and associates was unrelated to the investigation into Bash—and therefore irrelevant to wiretap 20-017's necessity—because Bash and Eversole ran "separate" prison operations and did not communicate with one another. (Doc. 309 at 18.) In short, Bash asserts that the affidavit misrepresents the relevance of previous investigative methods as to him specifically. The Court disagrees.

The wiretap application for 20-017 and its incorporated materials go into great detail about the relationship between the Fresnecks, Aryan Brotherhood, and related enterprises. The affidavit states that the "Fresneck criminal street gang conspiracy . . . overlaps substantially with the [] criminal enterprise" targeted by the federal wiretap, the Aryan Brotherhood. This is because Fresnecks such as Bash work together with Aryan Brotherhood members, such as Eversole, to facilitate the Brotherhood's goals. For example, the affidavit describes a transaction in which Eversole negotiated the sale of six firearms to a confidential informant, after which delivery of the firearms was executed by Geoffrey Guess, a known Fresneck. (Doc. 222 at 459, 478.) The state wiretap itself identifies Robert Eversole and several named associates, all described fully in the Federal Affidavit, as "primary co-conspirators and target subjects of this investigation." (Doc. 222 at 445–46.) "It is because the criminal street gang conspiracy and criminal enterprise involve the same group of co-conspirators that [the state and federal wiretap] applications arise out of the same investigation." (*Id*.)

Far from Bash's assertion that Eversole's operation was "separate" from Bash, they both operated through Fresneck street gang members for the benefit of the Aryan Brotherhood. At the time of the wiretap applications, Bash and Eversole were both incarcerated Aryan Brotherhood associates who exercised direction and control over Fresneck members to execute drug and weapons trafficking transactions. (Doc. 222 at 16, 18, 468). They shared associates, including Derek Smith, (*see* Doc. 222 at 48, 388–89, 446), and they referenced one another's activity with coconspirators on jail calls. (*Id*. at 325;470). Accordingly, Bash was identified as target of the federal wiretap investigating the Aryan Brotherhood, (*Id*. at 10), and Eversole's

associates were targeted in wiretap 20-017. (*See Id*. at 424–446).

The facts of the affidavits establish that Eversole, Bash, and their associates were part of the same conspiracy subject to the same investigation. The Court thereby declines to find that wiretap affidavit 20-017 "misrepresents" the relationship between them such that investigative efforts into Eversole and associates are "unrelated" to a necessity finding with respect to Bash.

2. <u>Prior Necessity Finding</u>

Because there was no misrepresentation, the Court now considers Bash's argument that wiretap 20-017 was not necessary because alternate investigative techniques were not sufficiently employed before the wiretap issued. (Doc. 309 at 18.) The issuing court's necessity finding is reviewed for abuse of discretion with particular deference where, as here, the case involves the investigation of a conspiracy. *United States v. Reed*, 575 F.3d 900, 909 (9th Cir. 2009) (citing *United States v. McGuire*, 307 F.3d 1192, 1197–98 (9th Cir. 2002)).

The affidavit supporting wiretap 20-017 describes many investigative efforts employed against numerous co-conspirators—including Derek Smith, Stephanie Madsen, and Kristen Bash—several months before the wiretap issued, including: surveillance, GPS monitoring, recorded jail calls, warrants for review of relevant Facebook accounts, bank account analysis, pen registers, toll records, confidential informants, and the like. (*See* Doc. 222 at 535–564.) This record belies Bash's complaint that the government "went straight" to seeking a wiretap after discovering contacts between Bash and the targets of wiretap 20-017 in July 2020. In fact, some of the traditional investigative efforts aimed at the 20-017 wiretap targets date all the way back to *March* 2020. (*See* Doc. 222 at 537–564.)

Accordingly, this Court previously concluded that "the affiant explained to the reviewing judge with adequate specificity why, in the detective's experience, the goals of the investigation had not and could not be accomplished through the use of the confidential informants or other traditional means of law enforcement investigation." (Doc. 284 at 11.) Therefore, the affidavit established the necessity required for a wiretap. The Court sees no reason to reconsider its prior finding as to the necessity of wiretap 20-017. *Sch. Dist. No. 1J v. AC & S, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993) (motions for reconsideration are appropriate where there is newly discovered

evidence, clear error was committed, or if there is an intervening change in the law.) Bash's request to suppress wiretap 20-017 is **DENIED**.[1]

### B. Wiretap 20-018

Wiretap 20-018 was sought several days after the execution of wiretap 20-017. The application seeking wiretap 20-018 incorporated the affidavit and other application materials for wiretap 20-017, including the federal wiretap application. Bash first challenges wiretap 20-018 on the grounds that its supporting affidavit "falsely represented" a loss of contact with CRI-8, discussed in this Court's prior order, with whom Bash had once offered to conduct a drug transaction. (Doc. 309 at 28–29.) Bash notes that the same day the application for 20-018 was submitted, a conversation recorded by wiretap 20-017 revealed that CRI-8 was incarcerated in the Fresno County jail. (*Id*. at 29.) Bash accuses the affiant of not properly searching for this informant before concluding that the informant was unavailable in application 20-018. (*Id*.)

To the extent that the description of the informant's availability in the 20-018 affidavit can be characterized as a misrepresentation, it was not a material one. It appears obvious that CRI-8's incarcerated status would have severely hampered his utility as an informant. Furthermore, as discussed below, the affidavit for wiretap 20-018 demonstrated the requisite necessity regardless of CRI-8's availability.

Wiretap 20-018 targeted two phones belonging to Bash and one belonging to Joseph McWilliams, who had previously been referenced in conversations between Smith and Bash under the moniker "Janky" and was otherwise involved with the Fresnecks and other local gangs. (*See* Doc. 222 at 205–209). The Court will address each wiretap target in turn.

#### 1. Bash's Phones

Wiretap 20-018 sought to target two additional contraband cell phones that Bash was using from within Salinas Valley State Prison. Authorities identified these phones through their communications with the target phones of wiretap 20-017. Bash argues that wiretapping these contraband phones was unnecessary because toll analysis showed that he was only using those

---

[1] In light of this finding, the Court need not address Bash's argument that wiretaps 20-018 and 20-019 were "tainted" by their incorporation of and reliance on the application and affidavit supporting wiretap 20-017.

9

phones to contact Stephanie Madsen, Kristen Bash, and Derek Smith, whose own phones were already subject to active wiretap 20-017.

This argument ignores the fact that, in a conversation captured by wiretap 20-017, Bash and Smith discuss "switching from one phone number being used to another." (Doc. 222 at 199.) Indeed, the targets of 20-017 were *already* using additional, as-of-yet-untapped, phone numbers to communicate with Bash: the toll analysis demonstrated that Stephanie Madsen was using at least two phone numbers to contact Bash, only one of which was the subject of wiretap 20-017. (*See* Doc. 222 at 204.) The federal wiretap information incorporated with the 20-018 application also demonstrates that Bash was maintaining communications outside of the 20-017 wiretap targets, including at least one communication with gang affiliate Joseph McWilliams. (Doc. 222 at 65–66.) These facts, when considered with the difficulty of using traditional investigative techniques due to Bash's incarcerated status (as discussed in incorporated wiretap application 20-017), demonstrated the necessity required for targeting Bash's contraband cell phones in wiretap 20-018.

2. McWilliams's Phone

As to McWilliams's phone, Bash argues that the wiretap was not necessary because authorities did not sufficiently use other techniques to investigate McWilliams before subjecting him to the wiretap. According to the affidavit, McWilliams—who admitted to being affiliated with the Fresnecks during a previous incarceration—was captured by wiretap 20-017 during a September 17, 2020 phone conversation with Derek Smith. In that conversation, McWilliams and Smith discussed McWilliams's many contacts and familiarity with other conspirators and gang members; McWilliams's recent and future drug dealing transactions; and McWilliams's imminent plans to acquire a weapon. (Doc. 222 at 204–210.)

Despite referring to himself as an "inactive" gang member, McWilliams described his management of relationships with other gangs, such as the Calwa Bulldogs, about which McWilliams was reporting directly to Kenneth Bash. Bash, too, was using McWilliams to communicate with non-incarcerated gang members on behalf of the Fresnecks and Aryan Brotherhood. McWilliams and Smith also discussed attacking someone named "Zane" and his

roommate. (*Id*. at 207–208.) A toll analysis of McWilliams's phone revealed that he was also in contact with Kristen Bash, (Doc. 222 at 210), and he was surveilled meeting with Derek Smith between September 17–18, 2020. (Doc. 222 at 217.)

While it is true that investigators did not exhaust traditional methods as to McWilliams specifically before seeking to tap his phone, such exhaustion was not required. In *United States v. Rivera*, the Ninth Circuit clarified that where "the purpose of the wiretap was to obtain evidence against [an] entire [] organization," the necessity analysis should include all pre-wiretap investigative efforts directed *at the organization*, not only efforts "directed at the users of the [] telephones for which the wiretap was sought." 527 F.3d 891 at 903, n.2 (9th Cir. 2008) (emphasis added); *see also Reed*, 515 F.3d at 911 (citing *McGuire*, 307 F.3d at 1197–99) ("[T]he necessity requirement is directed to the objective of the investigation as a whole, and not to any particular person. If the Government can demonstrate that ordinary investigative techniques would not disclose information covering the scope of the [] enterprise under investigation, then it has established necessity for the wiretap.")

The *Rivera* court distinguished investigations of organizations from investigations of individuals as discussed in *Gonzalez, Inc.*, which Bash cites several times in his briefing. In *Gonzalez, Inc.*, several government agencies were investigating an alien smuggling operation that frequently used buses owned and operated by Gonzalez, Inc. *United States v. Gonzalez, Inc.*, 412 F.3d 1102 (9th Cir. 2005). The investigators used confidential informants, poll cameras, undercover officers, wiretaps, and a number of other techniques to gather information within two specific bus terminals. Then, authorities sought to wiretap the bus company's main office with little investigation of that office beforehand. The explicit aim of the main office wiretap was to connect the company's founder to the illegal smuggling operation. The Ninth Circuit held that prior investigation of the smuggling ring could not meet necessity as to the founder and other main office targets, because those targets had not yet been connected to the illegal operation.

Here, as in *Rivera*, previous investigative efforts targeted at the criminal organization can and do demonstrate necessity as to individuals that have already, via other methods, been clearly connected to the organization under investigation. The affidavit makes clear that McWilliams has

1  established history and affiliation with the Fresnecks and appeared from his phone call with
2  Derek Smith to be imminently involved with gang operations.  The Ninth Circuit has upheld
3  wiretaps in comparable circumstances.

4  In *United States v. Garcia-Villalba*, the Ninth Circuit affirmed the necessity of a wiretap
5  in the context of a sophisticated drug-trafficking conspiracy where the government's only prior
6  investigation of the target subject was using a pen register and trap-and-trace device on the target
7  phone, as well as making an effort to surveil the subject himself, "not merely unconnected
8  individuals associated with earlier wiretaps."  585 F.3d 1223, 1232 (9th Cir. 2009).  And in
9  *Shryock*, pre-wiretap efforts were sufficient to demonstrate necessity where the government had
10 "monitored and recorded numerous contacts between the [conspiracy] members" because the
11 enterprise was, as here, a "broad-based organization with several hundred members and an
12 unknown number of associates." *United States v. Shryock*, 342 F.3d 948, 976 (9th Cir. 2003).[2]

13 Considering the facts of the affidavit and the nature of the Fresneck organization, as well as
14 the nature of the investigation as a whole, the Court finds that the issuing court did not abuse its
15 discretion in concluding that necessity existed to wiretap McWilliams's phone.  As such, Bash's
16 request to suppress this wiretap is **DENIED**.

17 **C.    Wiretap 2019**

18 Wiretap 20-019 targeted phones utilized by Bash associates Jacob Renshaw, Stephanie
19 Madsen, Joseph McWilliams, and Todd Morgan.  (Doc. 309 at 32.)  Bash, again, argues that
20 wiretap 20-019 lacked necessity because traditional investigative techniques were not sufficiently
21 employed against the specific owners of the tapped phones.  (Doc. 309 at 30–33.)  This argument
22 fails for the reasons discussed above: when an investigation targets an organization as a whole,
23 any pre-wiretap investigative efforts of that organization can establish necessity as to established
24 conspirators of that organization.  Crucially, the owners of the phones targeted by wiretap 20-019
25 had established association with the Fresnecks, and other investigative methods had confirmed
26 their current involvement with the gang before authorities sought wiretaps on their phones.

---

28 [2] The affidavit notes that the Fresnecks have approximately 200 members in the State of California. (Doc. 222 at 454.)

The Gang Intelligence Unit at Salinas Valley State Prison confirmed to the investigative team that Todd Morgan was the Aryan Brotherhood member who exerts control over the entire prison on behalf of the Brotherhood; Bash takes orders from Morgan. (Doc. 222 at 324–25, 413.) Text messages between Madsen and Bash discuss efforts to smuggle drugs into Salinas Valley State Prison for Morgan. (Doc. 222 at 499.)

Jacob Renshaw is a self-admitted "Skinhead" with prior convictions and case associations to Fresneck members. (Doc. 222 at 271.) Renshaw was captured on wiretap 20-018 in a conversation with Kenneth Bash in which Renshaw planned to "load his car up" with drugs from a storage unit and drive the drugs to Oregon on Bash's behalf. (Doc. 222 at 301.) Renshaw also made comments about committing robberies to raise additional funds and was engaged in seevral other conversations with Madsen and other coconspirators about drug trafficking. (*Id*. at 301, 306–309.) Prior to these intercepted conversations from wiretaps 20-017 and 20-018, the investigative team reports knowing that Renshaw was located in Fresno prior to being ordered to Montana to take care of a drug debt owed to Bash. (*Id*. at 301, 306.)

Madsen and McWilliams's connections to the Fresnecks are described in previous wiretap affidavits summarized elsewhere in this Order and need not be repeated here.

As with wiretap 20-018, wiretap 20-019 seeks to investigate the Fresneck and Aryan Brotherhood organizations as a whole—not merely individual targets. Prior affidavits established the necessity of wiretaps to investigate these organizations through the failure, limitations, or impossibility of traditional investigative tactics. Because the targets of 20-019 were established members of the organizations targeted in this investigation, authorities need not have exhausted traditional investigative techniques specifically as to the targets of wiretap 20-018. *See Reed*, 515 F.3d at 911 (citing *McGuire*, 307 F.3d at 1197–99). Bash's request to suppress 20-019 for lack of necessity is thereby **DENIED**.

**III.   *Franks* Hearing**

In the alternative to suppression, Bash requests a Franks hearing. An otherwise valid wiretap may be suppressed if the defendant can show the wiretap application contained intentionally or recklessly false information that was material to the finding of probable cause or necessity. *See*

*United States v. Leon*, 468 U.S. 897, 923 (1984); *United States v. Meling*, 47 F.3d 1546, 1553 (9th Cir. 1995); *see also United States v. Ippolito*, 774 F.2d 1482, 1485 (9th Cir. 1985) (applying a *Franks* analysis to necessity showings). A criminal defendant is entitled to a hearing to test the veracity of an affidavit supporting the application under *Franks v. Delaware*, 438 U.S. 154 (1978), if he can make a substantial preliminary showing that "the affidavit contain[ed] intentionally or recklessly false statements, and ... [that] the affidavit purged of its falsities would not be sufficient to support" the required probable cause or necessity findings. *United States v. Lefkowitz*, 618 F.2d 1313, 1317 (9th Cir. 1980). *Franks* applies to omissions as well as false statements. *United States v. Stanert*, 762 F.2d 775, 781 (9th Cir. 1985). A defendant requesting a *Franks* hearing bears the burden of proof and must make a substantial showing to support the required elements. *United States v. Chavez Miranda*, 306 F.3d 973, 979 (9th Cir. 2002). If the defendant fails to make a "substantial preliminary showing" with respect to either intentional or reckless inclusion or omission, or materiality, the district court should not conduct a *Franks* hearing. *See Shryock*, 342 F.3d at 976–77.

Though Bash alludes to many alleged misstatements and omissions in his motion, he does not make a substantial preliminary showing that these misstatements or omissions were material or were made intentionally or recklessly. As such, Bash's request for a *Franks* hearing is **DENIED**.

**IV.    Motion to Compel**

Bash seeks production of a recording in which he discusses a potential drug transaction with a confidential informant. (Doc. 321.) In the September 9, 2022 hearing, the government agreed that it would not use the contested recording on direct or cross-examination, including for impeachment purposes. As such, the statement is not a "relevant" recorded statement under Rule 16(a)(1)(B). The parties agreed that with the government's stipulation to not use the contested recording, the motion to compel is moot. It is **DENIED** as such.

## CONCLUSION

Accordingly:

1. Defendant Kenneth Bash's Motion to Suppress and Request for a *Franks* hearing, (Doc. 309), is **DENIED**.

14

2. Defendant Kenneth Bash's Motion to Compel, (Doc. 321), is **DENIED AS MOOT**.

IT IS SO ORDERED.

Dated:   **September 30, 2022**

*/s/ Jennifer L. Thurston*
UNITED STATES DISTRICT JUDGE