# EXHIBIT 1

Case 1:20-cr-00238-JLT-SKO Document 676 Filed 06/07/23 Page 2 of 21
United States v. Williams, Not Reported in Fed. Supp. (2017)
2017 WL 4310712

KeyCite Yellow Flag - Negative Treatment

Distinguished by United States v. Wiley, D.Conn., July 8, 2022

2017 WL 4310712

Only the Westlaw citation is currently available.

United States District Court, N.D. California.

UNITED STATES of America, Plaintiff,

v.

Alfonzo WILLIAMS, et al., Defendants.

Case No. 3:13-cr-00764-WHO-1

|

Signed 09/28/2017

**Attorneys and Law Firms**

Ronnie Montana Wagner, San Francisco Police Department Police Legal, S. Waqar Hasib, William Frentzen, Damali A. Taylor, Scott D. Joiner, Kevin James Barry, United States Attorney's Office, San Francisco, CA, for Plaintiff.

John R. Grele, Law Office of John R. Grele, John Timothy Philipsborn, Tony Tamburello, Attorney at Law, Steve Gary Kalar, Federal Public Defender's Office, Mark Stuart Goldrosen, Law Offices of Mark S. Goldrosen, Julia Mezhinsky Jayne, Jayne Law Group, P.C., Josh Alan Cohen, Clarence Dyer & Cohen LLP, Mark Rendon Vermeulen, Law Office of Mark R. Vermeulen, Doron Weinberg, Law Offices of Doron Weinberg, Robert Frederick Waggener, Law Office of Robert Waggener, Winston Y. Chan, Gibson Dunn Crutcher LLP, Severa Keith, The Keith Law Office, P.C., Mohammad Ali Hamoudi, Joseph Richard Rose, San Francisco, CA, Richard Alan Tamor, Law Offices of Tamor & Tamor, David Lee Andersen, Andersen & Zimmer, Oakland, CA, Jason Shawn Nelson, The Nelson Defense Firm, Larkspur, CA, James Scott Thomson, Law Offices of James S. Thomson, Amy E. Craig, Ismail Jomo Ramsey, Ramsey & Ehrlich LLP, Berkeley, CA, Cassandra Lee Gaedt-Sheckter, Gibson, Dunn and Crutcher LLP, Palo Alto, CA, for Defendants.

**OMNIBUS ORDER ON MOTIONS IN LIMINE**

Re: Dkt. Nos. 1239, 1242, 1246, 1247, 1248, 1249, 1250

**INTRODUCTION**

William H. Orrick, United States District Judge

**\*1** Six out of the eleven defendants in this RICO/VICAR prosecution are preparing to go to trial on October 23, 2017. Numerous pretrial motions were filed by the government (Dkt. No. 1246) and defendants Adrian Gordon (Dkt. No. 1239), Charles Heard (Dkt. No. 1242), Reginald Elmore (Dkt. No. 1247), Esau Ferdinand (Dkt. No. 1248), Jaquain Young (Dkt. No. 1249), and Monzell Harding, Jr. (Dkt. No. 1250).[1] My rulings follow.

**DISCUSSION**

**I. GOVERNMENT'S MOTIONS IN LIMINE (DKT. NO. 1246)**

**1. Preclude Extrinsic Impeachment Evidence**

The government anticipates that defendants will seek to impeach law enforcement witnesses with evidence of misconduct and seeks an order excluding such evidence. U.S. MiL at 1 (Dkt. No. 1246). Federal Rule of Evidence 608(b) provides, "extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness." Fed. R. Evid. 608. Defendants should be mindful of the general rule.

That said, a court, in its discretion, may allow inquiry into specific instances of a witness's conduct if they are probative of the character of truthfulness. Id. The Ninth Circuit recognizes a limited exception called "impeachment by contradiction," which "permits courts to admit extrinsic evidence that specific testimony is false, because contradicted by other evidence." United States v. Castillo, 181 F.3d 1129, 1132 (9th Cir. 1999). "Impeachment by contradiction" is generally limited to a witness's direct testimony, but the Castillo court "[did] not hold that a bright line distinction between testimony volunteered on direct examination and testimony elicited during cross-examination must be rigidly enforced so as to exclude all impeachment by contradiction of testimony given during cross-examination." Id. at 1134. The court in United States v. Kincaid-Chauncey, cited by the government, also recognized the discretion of the district court to admit extrinsic evidence for impeachment of testimony elicited during cross-examination. 556 F.3d 923, 933 (9th Cir. 2009).

WESTLAW © 2023 Thomson Reuters. No claim to original U.S. Government Works.

**\*2** In line with this authority, it would be improper to order a blanket exclusion of extrinsic evidence for impeachment. The government's motion is DENIED WITHOUT PREJUDICE. I will rule on particular evidence proffered to impeach a specific witness's testimony after any party's objection.

### 2. Consider Evidence Already Presented to Court in Determining Admissibility of Co-Conspirator Statements

The government contends that the court "can and should" use the "fairly comprehensive [pre-trial] record establishing the existence of a conspiracy" in determining the admissibility of evidence at trial, including co-conspirator statements. U.S. MiL at 4–5. It specifically mentions the testimony of Damon Jackson and exhibits admitted during the gang expert hearing. The defendants urge that the court should exclude certain alleged co-conspirator statements outright and hold an evidentiary hearing to determine the admissibility of the remaining statements. Defs.' Joint Resp. at 2.[2]

The parties agree that the court is not bound by the rules of evidence at such a hearing, *see* Fed. R. Ev. 104(a), but defendants warn of four qualifications to this general principle. First, "Rule 104(a) does not diminish the inherent unreliability of [a co-conspirator's out-of-court] statement[s]. Because of this presumptive unreliability, a co-conspirator's statement implicating the defendant in the alleged conspiracy must be corroborated by fairly incriminating evidence." *United States v. Silverman*, 861 F.2d 571, 578 (9th Cir. 1988). Moreover, "[o]ne presumptively unreliable statement cannot be invoked to corroborate another, particularly when each was allegedly uttered by the same declarant." *Id.* at 579. The second and third "qualifications" stem from the same foundation—the court should not consider evidence suppressed under the Fourth and Fifth Amendments because constitutional suppression is not "a rule of evidence." *See Mapp v. Ohio*, 367 U.S. 643, 649–656 (1961). Fourth, defendants contend that "the Court should give no weight to unqualified opinions offered by Sgt. Jackson about gang alliances and rivalries, characteristics of gangs, and use of rap music." Defs.' Joint Resp. at 4.

The government's motion is GRANTED IN PART with these caveats. Any co-conspirator statements must be corroborated. When determining the admissibility of co-conspirator statements, I will not consider evidence suppressed on

constitutional grounds or the gang expert testimony I excluded. I will consider Sgt. Jackson's lay testimony.

### 3. Court Should Admit Cooperation Agreements

The government seeks an order admitting plea agreements for the government's cooperating witnesses in the event that the defendants attack the witnesses' credibility. It states that it will abide by the proscription against bolstering the truthfulness of the witness's testimony, but nonetheless seeks to admit the full text of the agreements, including any truthfulness provisions.

The government's motion is GRANTED IN PART. The cooperation agreements will be admitted *only when offered after* the defense specifically attacks the witness' credibility because of his/her cooperation. *See United States v. Brooklier*, 685 F.2d 1208, 1218 (9th Cir. 1982)("[P]lea agreements are admissible on the issue of bias, they are not to be used as a basis for supporting the truthfulness of the witness' testimony."); *United States v. Cerna*, No. CR-08-00730-WHA, Dkt. No. 3644 at 23–24, 2011 WL 838897 (N.D. Cal. Mar. 3, 2011). The admission of cooperation agreements may require additional instruction "that the agreement requiring the witness to testify truthfully [does] not mean that the testimony [is] in fact truthful." *Brooklier*, 685 F.2d at 1219.

**\*3** In addition, the government should notify the defense of its intent to introduce such evidence prior to introducing it, in the event the defense disputes that it has attacked a witness' credibility due to cooperation. *Cerna*, Dkt. No. 3644 at 24.

### 4. Court Should Require Defendants to Proffer a Good-Faith Basis for *Henthorn*-type Inquiry of Law Enforcement Witnesses

The government seeks to require defendants to make an offer of proof and relevance outside the presence of the jury regarding alleged misconduct by law enforcement officers, including allegations based on citizen complaints or news reports. It also contends that unsustained complaints should not be admitted at all. And, it seeks to apply this rule to civilian witnesses as well.

The motion is GRANTED IN PART. The defendants agree to the proposed procedure "except where the question is regarding an express, sustained finding of untruthfulness, a false statement, or a false report[,]" *Cerna*, Dkt. No. 3644 at

Case 1:20-cr-00238-JLT-SKO Document 676 Filed 06/07/23 Page 4 of 21
United States v. Williams, Not Reported in Fed. Supp. (2017)
2017 WL 4310712

24, in which case no proffer is necessary. The procedure will apply to unsustained citizen complaints as well, which may be admissible pending an analysis under Rule 403 if the evidence is relevant. *United States v. Jones*, 2005 WL 348398, at \*2 (9th Cir. Feb. 14, 2005).

The motion is DENIED to the extent that the government seeks to impose the same procedure to defense credibility attacks against civilian witnesses.

**5. Court Should Require Defendants to Provide Evidentiary Basis for any Claim of Duress or Self-Defense**

The government seeks an order requiring a defendant to proffer his ability to make out an affirmative defense, such as self-defense or duress, prior to presenting it to the jury to prevent distracting the jury with an unsupported claim.

The motion is DENIED WITHOUT PREJUDICE. The government may raise the motion at trial if it becomes apparent that a defendant is wasting time. *Cerna*, Dkt. No. 3644 at 24–25.

**6. Court Should Require Defendants to Provide Evidentiary Basis for any Claim that Someone Else Committed a Crime or Act**

Government seeks to require the defendants to proffer evidence before arguing third-party guilt and requests the court to view such evidence "with great skepticism." This motion is also DENIED WITHOUT PREJUDICE. As with the previous motion, the government can object, if necessary, at the appropriate time during trial. *Cerna*, Dkt. No. 3644 at 24–25.

**7. Preclude Defendants from Arguing Negative Inference from Absence of Any Particular Type of Evidence or Testing**

The government insists that the defendants should not be able to argue that a particular type of evidence is missing and therefore the jury cannot convict. It specifically references "admissions of CDP membership" and my orders suppressing the defendants' booking statements to contend that defense counsel should be precluded from arguing "there is no

evidence whatsoever that my client is a member of the charged enterprise[.]"

The motion is GRANTED IN PART. I agree that defendants should not argue that the specific evidence I precluded is missing, nor should they argue that "there is no evidence whatsoever that my client is a member of the charged enterprise" if that defendant made a suppressed statement to the contrary, as identified by the government in its motion. The motion is otherwise DENIED WITHOUT PREJUDICE because it is too vague. *See Cerna*, Dkt. No. 3644 at 25 ("There is no universal bar against defense comments regarding the government's failure to present witnesses or evidence, although in some instances certain arguments may be improper.").

**8. Preclude Defendants from Introducing Information not in Evidence to the Jury**

**\*4** The government requests that defense counsel be precluded from (1) making speaking objections that present inadmissible information to the jury, and (2) reading contents of documents not in evidence purportedly to question a witness or refresh his/her recollection. The motion is DENIED as unnecessary. No counsel should do what is described in this motion. Both sides must follow the rules of evidence and use the proper procedure to refresh recollection at trial. *Cerna*, Dkt. No. 3644 at 25.

**9. Rule 404(b) Does Not Bar Any Evidence in this Case**

The government argues that evidence of both charged and uncharged crimes and other acts committed by the defendants and others is admissible as proof of the existence of the CDP racketeering enterprise and is therefore not subject to analysis under Rule 404(b).[3]

Rule 404(b) precludes evidence of "other crimes, wrongs, or acts" to prove character or criminal propensity, but permits such evidence to be admitted for the limited purpose of "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b). "This rule is inapplicable, however, where the evidence the government seeks to introduce is directly related to, or inextricably intertwined with, the crime charged in the indictment." *United States v. Lillard*, 354 F.3d 850, 854 (9th Cir. 2003). The Ninth Circuit "recognize[s] two

United States v. Williams, Not Reported in Fed. Supp. (2017)
2017 WL 4310712

Case 1:20-cr-00238-JLT-SKO Document 676 Filed 06/07/23 Page 5 of 21

categories of evidence that may be considered 'inextricably intertwined' with a charged offense.... First, evidence of prior acts may be admitted if the evidence 'constitutes a part of the transaction that serves as the basis for the criminal charge.' Second, prior act evidence may be admitted 'when it [is] necessary to do so in order to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime.' " *United States v. DeGeorge*, 380 F.3d 1203, 1220 (9th Cir. 2004). But "[c]oincidence in time is insufficient." *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1013 (9th Cir. 1995). "There must be a sufficient contextual or substantive connection between the proffered evidence and the alleged crime to justify exempting the evidence from the strictures of Rule 404(b)." *Id.*

Where to draw the line in "permit[ting] the prosecutor to offer a coherent and comprehensible story" when defendants are charged with conspiracy to violate and substantive violations of the RICO statute is not always clear. "Those charges require proof of such elements as the existence of an enterprise, the association of the defendant with the enterprise, as well as the traditional requirements of a conspiracy. In addition, proof of the predicate acts required for establishing a pattern of racketeering activity under RICO is essential." *United States v. Rubio*, 727 F.2d 786, 797 (9th Cir. 1983). The difficulty is exacerbated here, where the charged conspiracy spans temporally over more than two decades, geographically across state lines, and substantively from murder to narcotics trafficking to prostitution. Second Superseding Indictment ¶ 15 (Dkt. No. 139). "[T]he rule is well established that the government in a conspiracy case may submit proof on the full scope of the conspiracy; it is not limited in its proof to the overt acts alleged in the indictment." *United States v. Rizk*, 660 F.3d 1125, 1131 (9th Cir. 2011); *see also United States v. Cervantes*, No. CR-12-00792-YGR, 170 F. Supp. 3d 1226, 1231 (N.D. Cal. 2016); *United States v. Cruz-Ramirez*, No. CR 08–0730-WHA, 2011 WL 5599630, at *3 (N.D. Cal. Nov. 17, 2011).

**\*5** To effectuate this analysis, I must evaluate each act individually. But the government's motion does not reference *specific* evidence; it seeks a broad ruling that *none* of the evidence it intends to introduce is subject to Rule 404(b). It argues that the defendants must point to specific evidence and argue that it is inadmissible under Rule 404(b). Defendants counter that proof of predicate acts fall within the first category, but it is the government's burden to prove that its "other acts"[4] evidence is inextricably intertwined with the charged conspiracy. *See Cervantes*, 170 F. Supp. 3d at 1234

("[T]he government also must make an affirmative showing how proof of each incident it seeks to admit constitutes proof of the scope of a charged conspiracy. Only then can it avoid a Rule 404(b) analysis.")(citation omitted). They insist that other acts that fall outside the definition of racketeering activity in 18 U.S.C. section 1961(1) cannot be considered "inextricably intertwined."[5]

The government's motion is overbroad. The defendants have raised several motions in limine challenging specific acts as inadmissible under Rule 404(b), which I address later in this Order. *See* discussion *infra* regarding Heard MiL at 2–5 (Dkt. No. 1242); Elmore MiL at 3–4 (Dkt. No. 1247); Ferdinand MiL at 3–9 (Dkt. No. 1248); Young MiL at 1–18 (Dkt. No. 1249); Harding MiL at 9–17 (Dkt. No. 1250). It would be improper to rule that none of the government's evidence falls within the strictures of Rule 404(b) without even assessing each act's connection to the charges.

## 10. Admission of Rap Songs[6]

The government spends the majority of its brief insisting that songs rapped by CDP members or associates are highly probative of the criminal enterprise and must be admitted. U.S. MiL at 12–30. It argues that evidence associated with 11 rap songs[7] is admissible because it is directly related to "(1) the crimes alleged, and (2) the existence, nature, membership, methods, means, and territory of the conspiracy and enterprise known as 'Central Divis Playas,' and 'Uptown,' as alleged in Count One and in all Counts alleging VICAR violations." U.S. MiL at 12. It contends that the lyrics are "probative of the enterprise, and relevant to specific crimes committed by various members of the enterprise[,]" and the relevance will be shown through the government's witnesses and cooperators, as well as from the songs themselves. *Id.* It confusingly switches between arguing that (1) the songs are not hearsay because they are "being offered to demonstrate enterprise and to prove associations not to prove the truth of the matters asserted[,]" and (2) the "statements" are excluded from hearsay as admissions of a party opponent because they were made by a defendant or a coconspirator. *See* Fed. R. Evid. 801(d)(2)(A),(E).

### a. Statements in "Strictly Pimpin" Made by Jaquain Young

**\*6** Only one song, "Strictly Pimpin," is rapped by a defendant in this case. The government argues that Young's statements are evidence of his state of mind, are further admissions that he is a pimp, and that his communications with the undercover agent. And it also points to a line that references CDP territory. In response, the defendants concede that "a rap song actually written or performed by a defendant may be admissible against that defendant—and that defendant only." Defs.' Joint Resp. at 22. "Strictly Pimpin" contains statements allegedly written and recorded by Young himself; those statements are not hearsay and may be admissible against him.[8] Young did not individually move in limine to exclude his song and the Joint Response does not offer specific reasons why his song should be excluded. During oral argument, however, Young's counsel pointed out that the song was rapped more than 15 years prior to the pimping charges. While this somewhat diminishes the probative value of the evidence, it does not reduce it to the point that it is substantially outweighed by the dangers of Rule 403. The government's motion is GRANTED as to Young's statements in "Strictly Pimpin." The evidence is only admissible against Young.

### b. The Remaining "Statements" in Songs Rapped by non-Defendants Constitute Hearsay

"To qualify for the hearsay exception of Rule 801(d)(2)(E), a foundation (must be) laid to show that: (1) the declaration is in furtherance of the conspiracy, (2) it was made during the pendency of the conspiracy, and (3) there is independent proof of the existence of the conspiracy and of the connection of the declarant and the defendant to it." *United States v. Eubanks*, 591 F.2d 513, 519 (9th Cir. 1979)(internal quotation marks omitted). The *Eubanks* court elaborated that "merely narrative declarations" are not in furtherance of the conspiracy; rather, the declarations "must further the common objectives of the conspiracy." *Id.* at 520. For the remaining songs, the government is attempting to have the evidence admitted for its truth, whether to prove the association of individuals depicted in the video, that the individuals associate in a particular neighborhood, or the veracity of the lyrics themselves, the evidence is offered for its truth.[9]

Defendants point out that the government's allegations that the songs are rapped by CDP members or associates does not mean that the raps are co-conspirator *statements*. The government must isolate each statement it seeks to introduce

and establish how each statement furthers the objectives of the conspiracy. It has yet to meet that burden.[10]

The government also contends that certain statements are adoptive admissions. For example, it highlights a segment of the "Big Banks" video in which defendant Williams sits on the steps of 457 Grove St (his grandmother's house and alleged CDP headquarters) and "clearly assent[s] to the words spoken about him." U.S. MiL at 18. But, under this exception, the government must first establish that "the defendant did actually hear, understand and accede to the statement." *United States v. Monks*, 774 F.2d 945, 950 (9th Cir. 1985). The defendants convincingly argue that "[t]he realities of modern video production make any such showing exceedingly difficult." Defs.' Joint Resp. at 22.

I am open to the possibility of additional foundational evidence establishing that certain statements within these rap songs fall into an exception to hearsay. At this time, the government has not established a sufficient basis for granting its motion.

### c. Even if the Statements are Non-Hearsay, Rule 403 Applies

**\*7** Because the parties heavily briefed this issue, I will provide my perspective on Rule 403 balancing of the rap songs and videos.[11] Under Rule 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of ... unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

To start, I am skeptical about the probative value of the songs. They are a form of artistic expression, and as with any artistic expression, it is difficult to distinguish between reality and fantasy. While exaggerations or fictional statements may be admissible for some purpose other than the truth of the matter asserted, *see, e.g., United States v. Foster*, 939 F.2d 445, 456 (7th Cir. 1991) (defendant's rap lyrics demonstrated his knowledge of the drug trade and certain drug code words), that is not the government's intended purpose in introducing this evidence as admissions put to song. Even if it was, I question whether a limiting instruction would keep the jurors from considering the evidence for an improper purpose. *See Thomas v. Hubbard*, 273 F.3d 1164, 1173 (9th Cir. 2001), *overruled on other grounds by Payton v. Woodford*, 299 F.3d

815 (9th Cir. 2002) ("There are, however, some cases in which out-of-court statements are so prejudicial that a jury would be unable to disregard their substantive content regardless of the purpose for which they are introduced and regardless of any curative instruction."). The inability to differentiate between fact and fiction is intensified here where the government plans to explain ambiguous lyrics through the interpretations of cooperators and/or informants, not the individuals that wrote the songs (who, to repeat, are not defendants here). These concerns heighten my wariness of the probative value of the raps and videos.

I also fear that the danger of unfair prejudice is substantial. As the defendants point out, the videos depict "images of young African-American men, guns, and drugs atop musical lyrics that denigrate other African-Americans, women, and cooperating witnesses." Defs.' Joint Resp. at 32.[12] This is a sanitized description of some images that are highly inflammatory. It is undeniable that certain scenes may arouse an emotional response, evoke a sense of horror, or appeal to an instinct to punish. *See United States v. Blackstone*, 56 F.3d 1143, 1146 (9th Cir. 1995)("Evidence is prejudicial if it appeals to the jury's sympathies, arouses its sense of horror, provokes its instincts to punish, or triggers other mainsprings of human action[.]")(quoting another source).

*8 Unfair prejudice is not the only danger at play here. The videos and songs could mislead the jury, may cause undue delay stemming from defense experts' attempts to "educate the jury about gangsta rap," which could waste precious time considering the prospective length of this trial, and might needlessly present cumulative evidence since the government presumably has other means of proving the associations presented in these videos. Given these dangers, I am not presently inclined to admit the videos/songs, other than Young's song. But I will remain open to the possibility of allowing the government to use certain portions of certain songs, still images from the videos, or excerpts from the lyrics, if it is able to establish the foundational requirements rendering the statements nonhearsay. The government's motion is DENIED WITHOUT PREJUDICE.

**11. Preclude Reference to Punishment of Any Kind**

The government seeks to prevent the defendants from referencing punishment of any kind in front of the jury, including "subtle" references such as "this case has serious consequences for the defendant." U.S. MiL at 31. The

defendants are precluded from referencing the particulars of any past or potential punishment in an attempt to elicit the sympathies of the jury. *See United States v. Frank*, 956 F.2d 872, 879 (9th Cir. 1991)("[I]t is inappropriate for a jury to consider or be informed of the consequences of their verdict.").

But the government's motion goes too far. Subtle references such as the one mentioned above are not really referencing punishment. And the defendants must be permitted to reference the punishment of cooperating witnesses in order to impeach them. *See United States v. Larson*, 495 F.3d 1094, 1105 (9th Cir. 2007)("[W]hile the Government has an interest in preventing a jury from inferring a defendant's potential sentence, any such interest is outweighed by a defendant's right to explore the bias of a cooperating witness who is facing a mandatory life sentence."). The government's motion is therefore GRANTED IN PART.

**12. Preclude Argument or Evidence of Previous Charging Decisions**

The government requests an order preventing the defendants from referencing charging decisions by the San Francisco District Attorney's office (or any other prosecutor) because those decisions are irrelevant to the defendants' guilt or innocence in this case. The defendants counter that preventing such argument or evidence may impact their constitutional right to present a complete defense. *See United States v. White*, 692 F.3d 235, 246 (2d Cir. 2012) ("Indeed, this [constitutional] guarantee would be an empty one if, in view of prosecutorial charging discretion, we barred evidence of charging decisions in all instances with no regard for its reliability or relevance."). I will not issue a blanket ruling precluding such evidence or argument. But the government may raise its objection at the appropriate time during trial, at which point I will rule on the admissibility of specific evidence or the propriety of a particular argument.

**13. Prior Convictions Are Admissible Enterprise Evidence**[13]

The government argues that 18 convictions or guilty pleas associated with the 11 defendants are admissible under Federal Rule of Evidence 803(22), and the guilty pleas are separately admissible as party-opponent admissions under Rule 802(d)(2). The convictions and pleas concern

United States v. Williams, Not Reported in Fed. Supp. (2017)
2017 WL 4310712

Case 1:20-cr-00238-JLT-SKO   Document 676   Filed 06/07/23   Page 8 of 21

firearm possession, narcotics, robbery, and murder, which the government contends are "highly probative of the defendants' agreement to participate in the CDP RICO racketeering conspiracy." U.S. MiL at 35.

Neither the government nor the defendants identified any Ninth Circuit precedent on the admissibility of judgments of convictions as substantive enterprise evidence. The government focuses on persuasive authority from other circuits holding that "prior convictions are admissible to show predicate acts in a RICO prosecution." *United States v. Pelullo*, 14 F.3d 881, 888 (3d Cir. 1994).

**\*9** But "[a]dmitting a judgment of conviction into evidence as one of the many pieces of evidence to prove a case is very different from according a judgment collateral estoppel effect." *Id.* The *Pellulo* court expounded on a defendant's constitutional right to a jury trial in a criminal case and held that the lower court erred when it instructed the jury that the prior conviction established as a matter of law an element of the RICO offense. *Id.* at 889–896. The government maintains that it will not use the convictions and pleas to impermissibly establish any facts as a matter of law under a collateral estoppel theory, but rather, will corroborate the convictions with additional evidence.

The defendants contend that notwithstanding the government's assertion, the practical effect of admitting the convictions will "establish a fact the government is constitutionally required to prove beyond a reasonable doubt, and in essence to impermissibly shift the burden to the defendants to disprove the element." Defs.' Joint Resp. at 38. For this reason, the *Pellulo* court directed the lower court to determine the admissibility of the convictions under Rule 403. The defendants insist that excluding the evidence would impose "a slight burden on the government to re-prove facts upon which a judgment of conviction is based, but it [would be] extremely prejudicial to the defendants to have the jury presented with their respective judgments of conviction and the judgments of convictions of their co-defendants." *Id.* at 39.

I agree with defendants that I must consider the admissibility of each conviction under Rule 403, and I find that each except Young's statutory rape conviction is admissible. I have found in other contexts that even non-violent crimes can be linked to this criminal enterprise and suppressed booking statements and other evidence accordingly. *See* Order Granting Harding's Motion to Suppress Cell Phone Data (Dkt. No. 632);

Order Granting Mot. to Suppress Booking Statements (Dkt. No. 1220). I need to apply that understanding of the enterprise consistently on this issue. Firearms possession, drug possession, possession of stolen property and burglary are all within or directly related to the scope of the enterprise defined in the Second Superseding Indictment.[14] *See United States v. DiNome*, 954 F.2d 839, 843 (2d Cir. 1992) ("Proof of [RICO] elements may well entail evidence of numerous criminal acts by a variety of persons, and each defendant in a RICO case may reasonably claim no direct participation in some of those acts. Nevertheless, evidence of those acts is relevant to the RICO charges against each defendant, and the claim that separate trials would eliminate the so-called spillover prejudice is at least overstated if not entirely meritless."); *United States v. Fernandez*, 388 F.3d 1199, 1242 (9th Cir. 2004)(citing *DiNome* with approval).

| Defendant | Incident Type | Date (Arrest, Conviction) | Overt Act | Guilty Plea | 403 Balancing | Admissible to Impeach |
|---|---|---|---|---|---|---|
| Elmore, Reginald | Firearm | 4-24-2007, 12-20-07 | N | Yes | Admit | Yes |
| Ferdinand, Esau | Drugs (5.17 grams cocaine base) | 5-23-2005, 8-3-2005 | G | Yes | Admit | No (<10 years) |
| Gilton, Antonio | Firearm | 4-6-2007, 7-3-2007 | M | Yes | Admit | No (<10 years) |
| Gilton, Antonio | Firearm | 4-19-2007, 7-3-2007 | M | Yes | Admit | No (<10 years) |
| Gilton, Antonio | Drugs (9.84 grams cocaine base) | 5-1-2008, 6-20-2008 | O | Yes | Admit | No (<10 years) |
| Gordon, Adrian | Firearm | 7-4-2008, 6-29-2009 | R | | Admit | Yes |
| Gordon, Adrian | Stolen Property | 8-8-2011, 9-6-2011 | Additional Acts (Dkt. No. 851) | Yes | Admit | No (misdemeanor) |
| Gordon, Adrian | Robbery | 11-5-2011, 7-30-2012 | BB | Yes | Admit | Yes |
| Harding, Monzell | Robbery | 1-15-2010, 3-9-2010 | X | Yes | Admit | Yes |
| Harding, Monzell | Stolen Property | 8-8-2011, 9-6-2011 | Additional Acts (Dkt. No. 851) | Yes | Admit | No (misdemeanor) |
| Harding, Monzell | Burglary | 8-27-2013, 12-5-2013 | Additional Acts (Dkt No. 851) | Yes | Admit | Yes |
| Heard, Charles | Firearm | 4-3-2003, 6-19-2003 | D | Yes | Admit | No (<10 years) |
| Heard, Charles | Firearm | 2-26-2005, 6-24-2005 | F | Yes | Admit | No (<10 years) |
| Heard, Charles | Firearm | 2-4-2007, 4-19-2007 | K | | Admit | No (<10 years) |
| Heard, Charles | Murder | 11-25-2009, 1-4-2011 | U | | Admit | Yes |
| Robeson, Paul | Drugs (4.73 grams cocaine base) | 3-18-2004, 8-19-2004 | E | Yes | Admit | No (<10 years) |
| Williams, Alfonzo | Drugs (13 ounces cocaine base) | 4-6-1997, 2-23-1998 | A | Yes | Admit | No (<10 years) |
| Young, Jaquain | Statutory Rape | 8-3-2002, 10-17-2003 | B | Yes | Deny | No (<10 years) |

**\*10** The government's motion is GRANTED IN PART, in accordance with the above chart. The jury will be instructed that the judgments of conviction do not establish any element of the enterprise in and of themselves as a matter of law. It

United States v. Williams, Not Reported in Fed. Supp. (2017)
2017 WL 4310712

Case 1:20-cr-00238-JLT-SKO Document 676    Filed 06/07/23    Page 9 of 21

will also be instructed that the convictions and pleas should only be considered against the convicted defendant.

**14. Prior Convictions Are Admissible for Impeachment Under Fed. R. Evid. 609[15]**

The government seeks a ruling allowing it to impeach the defendants with prior convictions if they testify. The government may impeach a testifying defendant with a felony conviction not more than 10 years old if the evidence outweighs its prejudicial effect to that defendant. Fed. R. Evid. 609(a)(1)(B). If more than 10 years have passed since the witness's conviction or release from confinement for it, the evidence is admissible only if its probative value substantially outweighs its prejudice effect. Fed. R. Evid. 609(b)(1). Both the government and the defendants have indicated a willingness to defer this decision. U.S. MiL at 37 n.10; Defs.' Joint Resp. at 42. I will wait to provide a final decision, but note that I am inclined to admit felony convictions less than 10 years old. I have indicated this tentative ruling in the table above.

**II. DEFENDANTS' MOTIONS IN LIMINE**

**A. Overt Acts Referenced in the Second Superseding Indictment (Gordon MiL No. 2, Dkt. No. 1239; Elmore MiL Nos. 1, 2, Dkt. No. 1247; Ferdinand MiL Nos. 1, 2, 3, Dkt. No. 1248; Harding MiL No. 1, Dkt. No. 1250; Young MiL Nos. 2, 3, Dkt. No. 1249)**

The defendants move to exclude evidence of overt acts referenced in the Second Superseding Indictment on grounds that the acts are irrelevant, unfairly prejudicial, or should be excluded under Rule 404(b). The motions are DENIED. The incidents specifically alleged in the second superseding indictment are within the scope of the charged conspiracy and not subject to Rule 404(b) analysis. *See United States v. Cervantes*, No. 12-00792-YGR, Dkt. No. 1007. These incidents are: Young's enticement of a minor to engage in prostitution on August 3, 2002 (2SI ¶ 17b); Ferdinand's possession on 5.17 grams of cocaine base on May 23, 2005 (2SI ¶ 17g), Young's 2005 threatening of a witness in retaliation for that witness reporting a crime (2SI ¶ 17j); Elmore possession of a 9 mm Barretta firearm on April 24, 2007 (2SI ¶ 17n); Ferdinand's possession of a .40 caliber Taurus pistol and ammunition on May 13, 2008 (2SI ¶ 17p); Gordon's possession of a .45 caliber Llama firearm on July 4, 2008 (2SI ¶ 17r); Elmore's brandishing and discharge of a 9 mm assault style pistol during the funeral of a rival

gang member on January 8, 2009 (2SI ¶ 17v)[16]; the alleged witness intimidation on October 6, 2009 involving Harding, Ferdinand and others (2SI ¶ 17w); and Gordon's December 17, 2013 presence at a residence with other alleged CDP members where four firearms were found (2SI ¶ 17ii).

**\*11** These acts fall within the alleged means and methods of the enterprise, which, as charged, included an agreement to distribute narcotics, engage in pimping, threatening and intimidating witnesses, and engage in acts of violence, in part by circulating a collection of firearms. 2SI ¶¶ 12–14. At this juncture, I am not inclined to exclude any of these acts under Rule 403. If it becomes evident during trial that the probative value is substantially outweighed by the dangers articulated in Rule 403, I will entertain an appropriate objection at that time.

**B. Other Acts Referenced in Second Superseding Indictment and Additional Acts in Dkt. No. 851 (Gordon MiL No. 1, Dkt. No. 1239; Ferdinand MiL Nos. 4, 6, Dkt. No. 1248; Heard MiL No. 1, Dkt. No. 1242; Elmore MiL No. 6, Dkt. No. 1247; Harding MiL No. 5, Dkt. No. 1250)**

Several defendants raised a general challenge to the government's intent to introduce more than 70 "additional acts" because some acts are irrelevant and others are unduly cumulative and prejudicial. *E.g.*, Ferdinand MiL No. 6, Heard MiL No. 1. While it is true that the government must make an "affirmative showing how proof of each incident ... constitutes proof of the scope of a charged conspiracy[,]" *Cervantes*, 170 F. Supp. 3d at 1234; *see supra* discussion re: U.S. MiL No. 9, it is equally true that it must be given an opportunity to do so. I generally agree with defendants that the government may cross the line into the presentation of cumulative evidence at some point in its offering of these additional uncharged acts, but I can make that determination during trial. When the government determines that it will not attempt to prove a specific additional act that it has identified, it should notify the defendants to avoid useless preparation.

For now, I will address the defendants' challenges to specific acts. The government contends that each of the acts identified by the defendants is "inextricably intertwined" with the charged conspiracy and therefore not subject to Rule 404(b) analysis. In my tentative rulings and at the hearing, I indicated my inclination to allow all evidence of defendants' past criminal and non-criminal acts. Because this requires a finding that each of the acts is "inextricably intertwined" with

the charged conspiracy, I will separately analyze each act identified by the defendants.

### 1. October 18, 2011 Levexier Homicide

Donte Levexier, a suspected member of rival gang KOP, was murdered on October 18, 2011. No one has been charged with the crime. The government alleges that defendants Gordon and Ferdinand, and unindicted CDP member Vernon Carmichael, murdered Levexier in retaliation for the 2010 shooting of alleged CDP member Gregory Walker and his pregnant girlfriend. According to the government, both shootings stem from a feud that started between CDP and KOP in August 2008 when defendants Heard and Elmore allegedly murdered KOP members Andre Helton and Isiah Turner. SSI ¶ 12t.

Gordon's challenge to the admissibility of this incident largely focuses on the purported lack of evidence. It is the jury's role to determine if the government proves its case. The government's proffered theory of relevance demonstrates that this act is "inextricably intertwined" with the pattern of racketeering activity charged in the indictment. Rule 404(b) does not apply. Further, the murder of an alleged gang rival is highly probative of the affairs of the enterprise. Its probative value is not substantially outweighed by the 403 dangers.

### 2. Turk Street Shootout

In my tentative rulings and at the hearing, I indicated my inclination to grant the defendants' motions in limine to exclude acts committed by unindicted co-conspirators. I specifically referenced the June 2010 Turk Street Shootout, identified in Elmore's motion in limine number 6. But during oral argument, the government articulated its theory of relevance and convinced me that this incident is necessary for it to present a coherent theory of the charged conspiracy, specifically the violence stemming from the gang rivalry between CDP and KOP. I am still inclined to exclude other acts allegedly committed by unindicted co-conspirators, but will defer issuing a blanket ruling until I hear the specific evidence at issue.

### 3. Firearm Possessions

#### a. Heard's Possession of a Firearm on April 3, 2003, His Possession of a Firearm and Crack Cocaine in February 2005, and His Possession of a Firearm in February 2007

*12 Heard does not specifically address the circumstances surrounding these incidents, but moves to exclude them as irrelevant or needlessly cumulative. Even though possession of a firearm is not included in the definition of racketeering activity under 18 U.S.C. § 1961(1), the government has alleged that "[i]t was further part of the means and methods of the enterprise that the defendants and other members and associates of CDP agreed to purchase, possess, maintain, use, and circulate a collection of firearms for use in criminal activity by the members and associates of CDP." SSI ¶ 12. Heard's possession of a firearm, therefore, could be directly related to the charges in the indictment. The government must have the opportunity to prove its case.

#### b. November 23, 2009 Police Stop and Recovery of Firearms and Ammunition

On November 23, 2009, San Francisco police officers stopped a vehicle owned by Bernard Peters and driven by defendant Esau Ferdinand. Peters and defendant Harding were passengers. The officers searched the car and recovered a firearm. All three were arrested. The officers obtained and executed a search warrant to swab Harding for DNA. The results failed to link Harding to the gun and no evidence was filed against him. He moves to exclude this evidence because there is nothing linking him to the gun and gun possession is not a racketeering act. The government insists that the incident is relevant to prove association in fact of CDP enterprise and Harding's agreement to participate in it.

Given the government's broad allegations in the indictment, the incident is not subject to Rule 404(b), but rule 403 balancing analysis suggests that it should be excluded. There is no evidence tying Harding to the gun, and yet the government seeks to use this evidence to prove Harding's agreement to participate in the conspiracy. The probative value is minimal and the risk of unfair prejudice is substantial. Harding's motion to exclude this evidence is GRANTED.

### 4. Robberies

**a. September 23, 2011-October 5, 2011 "Silver Van" robberies**

Gordon and Harding seek an order excluding any reference to a string of 15 robberies, deemed the "Silver Van Robberies," that occurred between September 23, 2011 and October 5, 2011. Gordon contends that there is a lack of evidence linking him to these robberies. No victim identified him, he was never caught with any stolen merchandise, and he was never detained, arrested, or charged with any of the robberies. Harding argues that there is no evidence linking him to 14 out of the 15 robberies. For the October 3, 2011 robbery, the victim picked Harding's photo from a photospread and wrote "Looks most familiar the one pointing the gun." And three days after the October 1, 2011 robbery, Harding returned a pair of stolen sunglasses that were taken from the victim.

The government has set forth a sufficient basis inextricably tying the Silver Van Robberies to the broader conspiracy; they are not subject to Rule 404(b). Further, the probative value of the evidence is not substantially outweighed by the Rule 403 dangers. The defendants' motions are DENIED.

**b. August 24, 2011 iPhone Robbery, 9/5/09 Robbery**

The government states that it will not use these incidents in its case in chief. Harding's motion is DENIED AS MOOT.

**5. Burglaries, Possession of Stolen Property**

**a. April 4-6, 2011 Narcotics Possession, Auto Burglary, Possession of Stolen Property; August 8, 2011 Auto Burglary and Possession of Stolen Property; June 26, 2012 Auto Burglaries**

Gordon identifies several acts that he moves to exclude from trial under Federal Rules of Evidence 401, 403, and 404(b). Gordon admits that the acts identified above involved at least one of his co-defendants, but highlights that these misdemeanor offenses are not listed as predicate racketeering acts nor are they included as part of the methods by which the enterprise and conspiracy allegedly operated. For the June incident, he contends that "this allegation amounts to nothing more than Mr. Gordon hanging out with guys whom the government alleges are CDP." Gordon MiL at 8. The

government argues that this evidence is "directly related to the fact that the defendant engaged in criminal activities with other CDP members[.]" U.S. Opp'n to Gordon's MiLs at 5.

*13 The evidence is sufficiently tied to the charged conspiracy that it avoids the strictures of Rule 404(b). Further, I see no risk of unfair prejudice in allowing it. Defendant's motion is DENIED.

**b. Residential Burglary on August 27, 2013**

Harding pleaded guilty to receiving stolen property associated with this incident, involving himself, Darryl Jones and another individual, purportedly "because he was arrested with two individuals who were apparently involved in a burglary." Harding MiL at 12. According to Harding, there is no evidence that he was present at the scene of the burglary. He argues that this incident is not relevant to the RICO conspiracy because burglary is not an alleged purpose of the enterprise, so it must be excluded unless the government sets forth a basis under 404(b).

The government contends that "members of CDP committed robberies and burglaries as one of the primary methods of funding the criminal activities of the enterprise." U.S. Opp'n to Harding MiL at 11. Harding is correct that the indictment does not specifically allege burglary, but it does allege a purpose of "[p]romoting and enhancing the enterprise and the activities of its members and associates, including, but not limited to ... robbery ... and other criminal activities." SSI ¶ 9.b. Accordingly, the government argues that this incident "go[es] to the core of the CDP association-in-fact enterprise and the means by which they carried out the conspiracy." U.S. Opp'n to Harding MiL at 12.

This incident is sufficiently intertwined with the allegations to avoid Rule 404(b). It is relevant and its probative value is not outweighed by unfair prejudice or the other factors listed in Rule 403.

**6. Narcotics-Related Acts**

**a. October 12, 2011 Detention and Digital Scales**

Gordon argues that his misdemeanor paraphernalia possession is not an act in furtherance of the conspiracy. The

United States v. Williams, Not Reported in F.Supp. (2017)
2017 WL 4310712

Case 1:20-cr-00238-JLT-SKO   Document 676   Filed 06/07/23   Page 12 of 21

government contends that his possession of digital scales, while in the company of other CDP members, is "direct evidence of association[,]" and "independently admissible as evidence of racketeering acts[,]" which includes drug trafficking crimes. U.S. Opp'n to Gordon MiL at 6.

If the government sought to use this evidence only as proof of association, its probative value would be substantially outweighed by the risk of unfair prejudice. But the indictment charges defendants with narcotics distribution and evidence that Gordon possessed digital scales is directly relevant to proving this charge. Evidence of this incident is not subject to Rule 404(b) and it is not unfairly prejudicial.

**7. Other Acts Allegedly Involving Defendant Harding**

**a. 10/12/11 Incident with Tyrice Ivy Driving**

According to the San Francisco Police Department Report, an officer made eye contact with Tyrice Ivy before observing him drive a couple of blocks away at a high rate of speed, and then park in the lot at Lilly's BBQ, purportedly in CDP territory. The officer observed Vernon Carmichael exit the back of the car and run north. Ivy and Defendant Gordon got out of the car. Carmichael returned after 30 seconds and said "Burrows I was just kidding." The three were detained; officers searched the vehicle, found nothing, and released all three at the scene. During detention, Harding was seen nearby watching.

**\*14** Harding argues that this incident is irrelevant, unfairly prejudicial, and subject to exclusion under Rule 404(b). The government contends that this incident shows a relationship between known CDP members and their presence together on a key piece of CDP territory, it need not reflect illegal conduct nor be specifically focused on Harding, and the location features prominently in several incidents and helps define CDP territory.

While this incident may have some marginal relevance for the reasons suggested by the government, it appears to be unfairly prejudicial, cumulative, and a time-waster. I GRANT the motion to exclude without prejudice to the government's ability to raise the issue again at trial if it deems it sufficiently material.

**b. 4/11/09 SFPD Response to Reports of Shots, 4/13/09 Arrest of John Bivens, 10/6/09—Baggie of Suspected Narcotics Recovered During Search Incident to Arrest**

The government represents that it will not use evidence of any of these incidents in its case in chief. Harding's motion is DENIED AS MOOT.

**C. Noticed and Unnoticed Co-Conspirator Statements (Gordon MiL No. 3, Dkt. No. 1239; Elmore MiL Nos. 3, 4, 5, Dkt. No. 1247; Ferdinand MiL Nos. 7, 8, 9, 10, Dkt. No. 1248; Young MiL No. 5, Dkt. No. 1249)**

The defendants filed several motions in limine insisting that the government must first establish the foundational requirements of any purported co-conspirator statements prior to claiming that the statements fall under the co-conspirator exception to hearsay. In addition to identifying particular co-conspirator statements in their various motions,[17] they urge that I should conduct a hearing prior to trial to determine the admissibility of the various statements identified by the government. Dkt. No. 1300.

"To qualify for the hearsay exception of Rule 801(d)(2)(E), a foundation (must be) laid to show that: (1) the declaration was in furtherance of the conspiracy, (2) it was made during the pendency of the conspiracy, and (3) there is independent proof of the existence of the conspiracy and of the connection of the declarant and the defendant to it." *United States v. Eubanks*, 591 F.2d 513, 519 (9th Cir. 1979). Of course, "[n]ot all statements made by co-conspirators can be considered to have been made in furtherance of the conspiracy." *Id.* at 520. Rather, the government must show that the declarations "further the common objectives of the conspiracy." *Id.*

The government has summarized the co-conspirator statements that it may use at trial. It appears that each is admissible against the declarant—the issue is whether the statement is also admissible against all the defendants because it is "in furtherance of" the conspiracy. The Ninth Circuit in *United States v. Nazemian*, 948 F.2d 522 (9th Cir. 1991) gave the following expansive examples:

**\*15** statements made to induce enlistment or further participation in the group's activities; statements made to prompt further action on the part of conspirators; statements made to reassure members of a conspiracy's continued existence; statements made to allay a co-

Case 1:20-cr-00238-JLT-SKO   Document 676   Filed 06/07/23   Page 13 of 21
United States v. Wilson, Not Reported in Fed. Supp. (2017)
2017 WL 4310712

conspirator's fears; and statements made to keep co-conspirators abreast of an ongoing conspiracy's activities....
When inquiring whether a statement was made 'in furtherance' of a conspiracy, we do not focus on its actual effect in advancing the goals of the conspiracy, but on the declarant's intent in making the statement.

*Id.* at 529.

Like Judge Gonzalez-Rogers in *Cervantes*, I am satisfied, given my knowledge of this case as a result of extensive briefing over the past three years and the many exhibits I have reviewed, that the government has made a sufficient proffer regarding each defendant's potential for involvement in the charged conspiracy. I do not think a separate hearing on each statement is necessary prior to trial. While I do not have copies of the statements themselves (except for Young's made in the holding cell), but only the government's summaries, these summaries indicate that the statements appear plausibly made in furtherance of the conspiracy. It will be up to the jury to determine if any individual defendant is a member of the enterprise and if the incident being discussed is in fact part of the enterprise.

In the government's oppositions, it indicates that some of these statements will not be offered for their truth and other statements will not be offered at all. The government shall provide me with a binder containing the statements it intends to use and shall give notice to defendants at least two days prior to the date it plans to use the statement. Defendants may make any objection to the statement either before or after a trial day.

### D. Motions in Limine Related to DNA Testing/Results

### 1. Exclude Kim From Referencing CODIS (Gordon MiL No. 6)

Gordon argues that Kim's conclusions and analysis can and should be separated from her reference to the FBI's Combined DNA Index System (CODIS) database. He insists that his presence in the CODIS database is highly prejudicial and will require additional time to explain to the jury, so the evidence should be excluded under Rule 403. Kim's cross-reference with the CODIS database was a critical step in her analysis, and removing it may leave a gap in the jury's understanding. His presence in the database may be prejudicial, but not unfairly so. His motion is DENIED.

### 2. Exclude SERI Report (Elmore Supp. MiL, Dkt. No. 1258)

Elmore claims that DNA evidence relating to overt act 17v (the January 2009 funeral shooting) should be excluded because serologists at the Serological Research Institute (SERI) analyzed these samples "according to the same methodology" they used on samples associated with analytical reports that I excluded in the Order on Admissibility of DNA Evidence ("Prior DNA Order")(Dkt. No. 1252). In an attempt to liken SERI's results concerning him to the reports I previously excluded, Elmore states in a conclusory fashion that SERI's testing "generated results below the stochastic threshold[,]" "considered alleles below the stochastic threshold in comparison to reference samples[,]" "used enhanced detection methods to amplify a small amount of DNA available for testing[,]" and "applied the CPI statistical method on mixed samples in an unreliable manner[.]" Elmore Supp. MiL at 2–3.

I decided to exclude SERI's reports in the Prior DNA Order after considering nearly a dozen briefs filed by the parties (*see* Prior DNA Order at 2 n.1), two days of testimony, and two rounds of oral argument. For strategic reasons, Elmore chose not to previously challenge the DNA evidence associated with him, nor did he join in the other defendants' motions. His motion now is not persuasive.

**\*16** The government indicates that SERI tested a much higher quantity of genetic material taken from the funeral shooting evidence, which led to "considerably more robust" results. U.S. Resp. to Mot. to Exclude DNA Evidence at 7 (Dkt. No. 1289). It compares the electropherograms associated with Heard and Elmore and concludes, "[a]cross the board, the testing in Elmore's case produced alleles with dramatically higher peak heights than were present with Heard." *Id.* at 8. The government's assertion appears to accurately reflect the results. *See* Barry Decl. ¶¶ 5, 7; *id.* Exs. D (Heard electropherogram), F (Elmore electropherogram). But regardless, without information describing SERI's methodology in analyzing Elmore's samples in particular, which Elmore's motion wholly lacks, I cannot question the reliability of the DNA evidence the government intends to introduce against him. His motion is DENIED, and Elmore may raise any problems with SERI's analysis during cross-examination.

### 3. Exclude SERI Reports Related to J. Helton Homicide (Young MiL No. 7)

Young seeks an order preventing the government from introducing against him DNA evidence from the Jelvon Helton murder. In the Prior DNA Order, I concluded that SERI's 2015 Analytical Reports dated January 23 and 27 contained unreliable results and should be excluded. To the extent Young aims to exclude these same reports, his motion is moot. The government has indicated that it will abide by the Prior DNA Order. U.S. Opp'n to Young MiL at 23.

### E. Gang Testimony and Evidence

### 1. Court Should Require the Government to Proffer, In Advance Of The Introduction of Gang Expert Testimony, How It Proposes To Introduce Particular Slang Terms Via The Gang Expert (Heard MiL No. 4)

Heard cites to my prior Order on Government's Gang Expert Testimony (Dkt. No. 927) to argue that the government should be required to make a proffer regarding the basis for its gang expert to testify as to the meaning of particular slang terms, prior to eliciting the testimony in front of the jury. The relevant portion of that order states:

> To the extent that they are relevant and not unduly prejudicial, Sgt. Jackson may give his opinions regarding common slang. This includes opinions 20 through 29, opinion 4 insofar as it concerns the meaning of "chopper" or "chop," opinion 30 insofar as it concerns the meaning of "shotcallers," "shooters," and "hitters," opinion 33 insofar as it concerns the meaning of "to fuck with" either the police or another individual, opinion 38 insofar as it concerns the meaning of "sliders," and opinion 43 insofar as it concerns the meaning of "taking a case." *Defendants may object to these opinions on relevance and/or undue prejudice grounds at trial. In ruling on such objections, if any, I will be particularly interested in how the jury will be exposed to the particular slang term through the other evidence at trial.*

Dkt. No. 927 at 8:27–9:7 (emphasis added).

I agree with the government that I can capably rule on objections during trial without a proffer. Heard's motion is DENIED.

### 2. Exclude Improper Lay Witness Testimony (Harding MiL No. 2)

Harding cites to Sergeant Jackson's testimony that Western Addition gangs, such as CDP, are "informal." 2/12/16 Hr'g Tr. at 151:12–15 (Dkt. No. 898). From this premise, he contends that lay witnesses must be prevented from testifying that a defendant is a "gang member" or "CDP member" because the jury will infer from this testimony that there must be a gang and then equate the gang to the legal conclusion that a RICO enterprise exists. He also argues that such testimony is not helpful because jurors can decide for themselves whether an individual is a member of CDP.

The government contends that Harding's motion "runs counter" to my previous orders. U.S. Opp'n to Harding at 4. In ruling on certain *Daubert* motions, I quoted Judge Alsup's decision in *United States v. Cerna*: "[t]he existence of any gang and its organization are key RICO proof elements" and "should be proven by first-hand testimony, presumably by former members, not by opinion from the police." Order on *Daubert* Motions at 3 (quoting *United States v. Cerna*, No. CR-08-00730-WHA, Dkt. No. 1721) (Dkt. No. 836). The government asserts that it "will present testimony from civilian witnesses who are deeply familiar with the defendants, with CDP, its activities, and its members." U.S. Opp'n to Harding at 4.

**\*17** The defendants are free to challenge the foundation for such testimony by objection or on cross-examination, but the government will be permitted to offer such evidence. It does not impermissibly offer legal conclusions to the jury—the government must still prove the existence of an enterprise, its conduct, and a pattern of racketeering activity. *United States v. Fernandez*, 388 F.3d 1199, 1221 (9th Cir. 2004). Harding's motion is DENIED.

### 3. Photo Arrays and Rosters (Harding MiL No. 3)

In line with his previous motion in limine, Harding aims to prevent the government from offering gang rosters and photo arrays because this amounts to expert testimony that certain individuals are gang members. He cites to my previous orders for support. *See* Dkt. Nos. 836, 927. But the government points to the latter order, where I stated "[n]othing in this Order limits Sgt. Jackson's testimony as a fact witness as long as there is an appropriate evidentiary basis for it." Dkt.

No. 927 at 1. It insists that the photo arrays and gang rosters will be properly introduced through fact witnesses, including Sgt. Jackson and other police officers who have personal knowledge of the individuals. And it states that the defendants can object at trial, if they think the government has provided an insufficient foundation.

In determining that Sgt. Jackson would be precluded from testifying as an expert as to gang alliances and rivalries, I quoted the Second Circuit's opinion in *United States v. Mejia*, 545 F.3d 179, 190–91 (2d Cir. 2008). *See* Dkt. No. 927 at 13–14. The *Mejia* court analyzed the "increasingly thinning line separat[ing] the legitimate use of an officer expert ... from the illegitimate and impermissible substitution of expert opinion for factual evidence[,]" and found, "when those officer experts come to court and simply disgorge their factual knowledge to the jury, the experts are no longer aiding the jury in its factfinding; they are instructing the jury on the existence of the facts needed to satisfy the elements of the charged offense." 545 F.3d at 190–91. The court concluded that "[t]he Government cannot satisfy its burden of proof by taking the easy route of calling an 'expert' whose expertise happens to be the defendant." *Id.* at 191. In situations such as these, an "officer expert's status ... [is] likely to give his factual testimony an 'unmerited credibility' before the jury." *Id.* at 192.

My concern, then as now, is that anointing Sgt. Jackson or any investigating officer as an expert would give his views on the central issue of the case—is any defendant a member of the criminal enterprise charged—unmerited credibility. I am allowing Sgt. Jackson to give expert opinion testimony on a narrow set of questions concerning slang terms. To avoid the jury giving his testimony the imprimatur of expertise when it comes to his lay testimony, I will preclude the government from indicating to the jury that it is offering him as an expert witness even though I am allowing the opinion testimony on slang terms.

I do not know how the government intends to use the photo array or rosters. The evidence of whether individuals are or are not in the enterprise is not whether they are in photo arrays or rosters maintained by the police but whether they committed the acts with which they are charged that make them part of the criminal enterprise. But it is conceivable that witnesses with personal knowledge can lay a foundation to admit the arrays and rosters and I will not preclude them from doing so.

**4. Picture of Writing on Williams' Wall (Young MiL No. 4)**

*18 Young moves to exclude a photo on Williams' wall allegedly documenting the names of CDP members and associates as inadmissible hearsay. The government contends that the photograph is physical evidence, not hearsay, and is more akin to an entry log of CDP members.

The photograph documents physical evidence present at the alleged location of CDP-headquarters. It is not hearsay. The government will have to make the connection at some point between the names on the wall and the criminal enterprise.

**5. Law Enforcement "Chronologicals of Investigation," Law Enforcement Email Between Inspector Cunningham and Kevin Kaney, Computer-Aided Dispatch reports (Young MiL No. 4)**

The government indicated that it will not offer these items as substantive evidence, it simply marked them for reference to refresh recollection if necessary. This motion is denied as moot.

**F. Motions in Limine Related to Photographs**

**1. Gruesome Crime Scene and Autopsy Photographs (Heard MiL No. 3, Ferdinand MiL No. 13)**

Defendants Heard and Ferdinand indicate that the government's exhibit list includes 21 crime scene, autopsy and medical examiner photographs of several homicides (Levexier, Helton and Turner, Richard Barrett, Jelvon Helton, Calvin Sneed). They move to exclude certain photographs under Rule 403, contending that the government should be required to limit its use of gruesome photographs and it should be required to use black and white versions.

The government contends that the photos are highly probative on several issues, including cause of death and positions of bodies, location and nature of gunshot wounds, witness testimony about victim locations, identity of deceased, and police officers' testimony about conditions of crime scene. It insists that potential impact on jury should be addressed through *voir dire* process and it rejects defendants' proposal to submit black and white photographs.

Case 1:20-cr-00238-JLT-SKO Document 676 Filed 06/07/23 Page 16 of 21

United States v. Piccolo, Not Reported in Fed. Supp. (2017)
2017 WL 4310712

The government has indicated that it will identify the particular photos it intends to introduce. I will defer ruling on this motion until I review those photos and conduct Rule 403 balancing analyses.

**2. Mug Shots (Harding MiL No. 9, Ferdinand MiL No. 12)**

Defendants seek to exclude all mug shots as irrelevant, unfairly prejudicial, and improper character evidence. The government contends that the mugshots will be used to identify defendants, and they are not unfairly prejudicial because they show only head and shoulders; do not indicate they were taken by law enforcement; contain no police markings, placards, or ID numbers; are set against neutral backgrounds with no height lines, no dates, and some show the individuals in street clothing. Moreover, the government asserts that it is no secret that defendants would have been arrested. It also points to other cases in this district in which mug shots were allowed. *United States v. Cerna*, 08-cr-0730-WHA; *United States v. Cervantes*, cr-12-0792. It offers to crop the photos and change the color of the orange sweatshirts to reduce any prejudicial impact.

As with the crime scene and autopsy photos, I will defer ruling until the government identifies the photographs it intends to introduce and provides me with the cropped and modified versions.

**3. Instagram Photos (Young MiL No. 8)**

Young seeks an order precluding photographs taken from his Instagram account as irrelevant, unnecessarily cumulative, and an undue waste of time. The government argues that the motion lacks specificity, and Young can object during trial.

**\*19** I agree. Young can object during trial, and I will rule on a particular photograph's admissibility at that time.

**G. Other Motions in Limine**

**1. Exclude Young's Statements Recorded on June 18, 2014 at 450 Golden Gate**

Young once again challenges the admissibility of certain statements from his recorded conversation with the confidential informant. I previously excluded certain

statements under *Massiah v. United States*, 377 U.S. 201 (1964), but deferred ruling on the admissibility of other statements under Rule 404(b) and Rule 403. *See* Dkt. No. 1105 at 2, 4. He takes particular issue with the government's intention to introduce his statements related to the following: (1) possession of a gun in March 2013, (2) past possession and/or concealment of firearms, (3) credit card fraud, (4) drug use, (5) hypothetical conduct, (6) discussing other inmates and their supposed crimes, (7) references to women as bitches, and (8) the informant's prejudicial statements. All but the third one listed above are admissible.

As with other prior acts regarding the defendants' firearms, Young's statements concerning possession and concealment of firearms (1 and 2 above) are directly related to the charges of the Second Superseding Indictment. But I agree with Young that his statements referencing credit card fraud (3 above) are beyond the scope of the enterprise as described in the Second Superseding Indictment. The government argues that Young's admissions to have taught fellow gang members about credit card fraud and shared profits with them are related to the purposes of the enterprise, even if credit card fraud is not explicitly listed in the indictment. But this is far afield from the charges in the indictment. Even though the government offers a theory of relevance, the statements related to credit card fraud should be excluded under Rule 404(b).

The government disputes Young's characterizations concerning categories 4, 5, and 6 above: the "drug use" statements pertain to Young's familiarity with a weed guy, who he believes is a government cooperator, the "hypothetical conduct" statements relate to the RICO charges then-pending against Young's co-conspirators, and the statements concerning "other inmates" actually pertain to his own admissions and agreements with other CDP members. The government's arguments convince me that these statements are directly tied to the charges in the indictment, therefore not subject to 404(b), and their exclusion is not warranted under rule 403.

While jurors may find Young's use of the word "bitch" offensive (7 above), allowing the jury to hear his repetitive use of the word is not *unfairly* prejudicial, especially considering the potential probative value in relation to the pimping charges. As for the informant's statements (8 above), they are admissible to provide context to the conversation, but not for their truth. *United States v. Whitman*, 771 F.2d 1348, 1352 (9th Cir. 1985)(upholding admission of informant's

United States v. Robeson, Not Reported in Fed. Supp. (2017)
2017 WL 4310712
Case 1:20-cr-00238-JLT-SKO Document 676   Filed 06/07/23   Page 17 of 21

statements to "enable the jury to understand [defendant's] taped statements").

## 2. Exclude Incomplete Evidence of Text Messages and Facebook Communications with SFPD Officer Julia Angalat (Young MiL No. 6)

**\*20** Young asks for an order excluding evidence of communications with the undercover agent on the basis that the evidence is incomplete. In previously ruling on Robeson's motion to compel discovery or suppress, I stated:

Robeson is entitled at trial to explore how the government lost the emails and failed to preserve the Facebook page from October 2012. Because of the amount of discovery that has been provided concerning communications between Robeson and the agent, and the likely inadvertence of the destruction of the 30 texts, I will not hold a hearing at this time, as Robeson requested, to determine if the government's failures to maintain the texts or the October 2012 Facebook page of the agent warrants additional relief, such as dismissal of the indictment or suppression of the evidence. These gaps in the evidence do not mean that the government has failed to disclose "material exculpatory evidence" sufficient to constitute a denial of Robeson's due process rights. *See Arizona v. Youngblood*, 488 US 51, 57 (1988). The missing texts may be potentially exculpatory but there is no evidence that they are apparently exculpatory or that they were destroyed in bad faith. *See California v. Trombetta*, 467 US 479 (1984). Dkt. No. 289 at 8–9.

The government contends that nothing in the thirty lost text messages contained substantive or exculpatory information, and Young raises no new arguments warranting suppression of the evidence.

I agree with the government. Admitting the surviving communications does not violate the doctrine of completeness, is not unfairly prejudicial, and oral testimony about the contents is admissible. The defendants can expose issues related to the destruction of the thirty texts on cross-examination.

## 3. Exclude Irrelevant, Unduly Prejudicial Evidence (Harding MiL No. 4)

Harding asks for an order precluding any reference to two individuals: his father, Monzell Harding, Sr., and deceased alleged CDP member Aubrey Abrakasa, for whom Harding has a memorial tattoo on his hand.

The government contends that it will prove Harding's membership in CDP in part by showing his connection with other members of the enterprise, including his father and Aubrey Abrakasa. It states that evidence will be introduced through fact witnesses and will aid the jury because Harding's family connection and his memorialization of a fallen fellow member through a tattoo on his body are strong evidence of his membership in CDP, particularly because it will show that the Abrakasa murder escalated violence between rival gangs. It asserts that defense counsel can ensure no confusion between father and son through cross-examination and argument.

The evidence is relevant to show Harding's connection to the alleged CDP enterprise. The risk of unfair prejudice stemming from his family connection and tattoo does not substantially outweigh the evidence's probative value.

## 4. Exclude Shoes and Shoeprint Evidence and Testimony (Harding MiL No. 6)

Harding argues that shoeprint evidence purportedly linking him to the scene of the August 27, 2013 residential burglary requires expert witness testimony and the government has failed to provide notice of such an expert. He contends that this evidence is particularly prejudicial because two perpetrators were identified by clothing, and there is no evidence that a third person was at the scene. The government counters that the officer should be permitted to testify under Rule 701 (lay witness testimony) because his observations are based on personal knowledge, not scientific, technical, or specialized knowledge, and his testimony will help the jury determine a fact in issue.

**\*21** I agree with the government that expert witness testimony is unnecessary; it can provide lay witness testimony of the shoeprint observed on the scene and the tread on Harding's sneakers. *See United States v. Baires-Reyes*, No. 15-cr-00122-EMC, Dkt. No. 180 at 91–94 (allowing, without objection, testimony from HSI special agent regarding similarities between defendants' shoes and evidence from the scene of a robbery).

United States v. Harding, Not Reported in Fed. Supp. (2017)
Case 1:20-cr-00238-JLT-SKO   Document 676   Filed 06/07/23   Page 18 of 21
2017 WL 4310712

**5. Preclude Government from Introducing Evidence Previously Suppressed by this Court (Harding MiL No. 7)**

Harding points to evidence previous suppressed that appears on the government's Exhibit List, including (1) January 22, 2010 post-arrest telephone search (Dkt. No. 489), (2) October 6, 2009 post-arrest telephone search (Dkt. No. 1097), and (3) November 9, 2011 Interrogation (Dkt. No. 1064). The government states that it will comply with court orders but reserves the right to use evidence if defendants open the door.

Harding's motion is GRANTED. The government must refrain from using evidence previously suppressed unless it becomes admissible to rebut a misleading inference related to the defendant's veracity. *See James v. Illinois, 493 U.S. 307, 312–14 (1990)*(limiting impeachment exception to the exclusionary rule to defendant's own testimony, not all defense witnesses); *United States v. Rosales-Aguilar, 818 F.3d 965, 970 (9th Cir. 2016)*(allowing impeachment exception to exclusionary rule for defense witness testimony related to defendant's own "perception, recollection and veracity").

**6. Exclude Any Reference to Harding having been shot or having been the victim of gun violence (Harding MiL No. 8)**

Harding argues that the government should be precluded from referencing the scar on his neck because it is irrelevant to charges and unfairly prejudicial. The government contends that the gunshot wound is relevant to his participation in a violent enterprise. He can argue it is possible to get shot without being a gang member, but it is up to the jury to decide.

Harding's motion is GRANTED. To the extent the evidence is relevant, the risk of unfair prejudice substantially outweighs the probative value of Harding's scar, unless the government can tie it to a specific incident at issue in this case.

**7. Preclude the Government from Introducing Evidence of Cellphone Seized 2/4/14 (Harding MiL No. 10)**

During oral argument the government indicated that no search of this phone has taken place, so there is no evidence associated with it. Harding's motion is denied as moot.

**8. That Defendants be Referred to by Proper Name (Harding MiL No. 11)**

Harding states that the government's exhibit list includes nicknames and that such references should be excluded unless and until the nicknames are introduced into evidence by a competent witness. The government counters that it will follow the rules of evidence and that the motion is premature, too vague and generalized. I agree, and the motion is denied without prejudice.

**9. That Phone Downloads must be precluded absent identification or relevance; hearsay; denial of confrontations; and no designation as coconspirator statements (Harding MiL No. 12)**

Harding asserts that it is impossible to fashion motions until government designates what evidence it will actually use. He argues that the content involves unnoticed coconspirator statements, the relevance of the majority of the material is not apparent, it casts defendants and friends/associates in a negative light, the contents are personal and private, and they are not evidence of any crime. The government counters that Harding has had this evidence for years. He is capable of identifying inadmissible content and bringing it to government's attention to meet and confer, or raising it with the court, but he has failed to do so. It contends that the motion should be denied as too vague. I agree and DENY Harding's motion without prejudice.

**\*22** The government has agreed to provide the defense with more specific designation regarding certain text messages and social media postings, but reserves the right to supplement once it receives disclosures from defense and reviews arguments at trial.

**H. Limited Use of Evidence**

**1. Limiting Instructions Concerning Jury's Consideration of Evidence Admitted Pursuant to FRE 404(b) or Hearsay Exceptions (Elmore MiL No. 8, Dkt. No. 1247)**

To the extent that any acts are subject to Rule 404(b), I will instruct the jury that any such evidence is admissible only against the defendant who engaged in the act. The specific instruction will be determined at the appropriate time. The

same goes for statements admitted under *certain* hearsay exceptions.

### 2. Guilty Pleas or Convictions of Witnesses as Substantive Proof of the RICO Conspiracy (Heard MiL No. 2)

Heard seeks an order precluding the government from using a witness's guilty plea or conviction as substantive proof of his guilt. The government's response fails to address the crux of Heard's motion—it focuses on guilty pleas and prior convictions of the defendants and its right to rehabilitate a cooperating witness if defense counsel attack his/her credibility. Heard does not dispute the admissibility of plea agreements for credibility determinations. *See United States v. Halbert*, 640 F.2d 1000, 1004 (9th Cir. 1981)("[T]he guilty plea or conviction of a codefendant may not be offered by the government and received over objection as substantive evidence of the guilt of those on trial. [citation]. While the evidence may not be used to establish a defendant's guilt, it may properly be considered by the jury in evaluating witness credibility.").

Heard's motion is GRANTED. The jury will be instructed on the limited purpose for which plea agreements or convictions of witnesses may be offered.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2017 WL 4310712

---

Footnotes

1    The government filed a protective notice of appeal (Dkt. No. 1260) of my order granting Harding's motion to suppress booking statements (Dkt. No. 1220), but the parties have indicated that they are preparing for Harding's participation in the first trial, commencing October 23. For this reason, any rulings on Harding's motions in limine should be considered tentative rulings. The government has also filed a protective notice of appeal of the Order on Admissibility of DNA Evidence (Dkt. No. 1252) as to Heard. Given the uncertainties with the retesting, the parties continue to prepare as if Heard will be proceeding to trial on the 23rd.

     In addition, defendants Ferdinand and Young have filed motions to sever from one another (Dkt. Nos. 1311, 1313). Those motions will be heard on October 16, 2017. To aid in the parties' pretrial preparations, I will rule on their motions in limine, with the understanding that it is possible that one of them may be severed from this first trial grouping.

2    Defendants cite the reasons as articulated in Elmore's Motions in Limine Numbers 3 and 4 (Dkt. No. 1247 at 4–9) and Gordon's Motion in Limine Number 3 (Dkt. No. 1239 at 10–13), which both incorporate by reference Antonio Gilton's motions in limine numbers 3 and 4 (Dkt. No. 967 at 9–18).

3    It should be noted that the government previously submitted a list of prior bad acts "that may be subject to admission at trial under Rule 404(b)." Dkt. No. 1021-1.

4    I use "other acts" to refer generally to other conduct charged in the indictment, as well as the "additional acts" identified by the government (Dkt. No. 851).

5    They also highlight a Seventh Circuit case cited by the government to argue that criminal enterprise evidence exempted from Rule 404(b) "[b]ecause enterprise was an essential element of the crimes charged" was "limited to crimes that detail[ed] the structure, common purpose, and continuity of the charged enterprise." Defs.' Joint Resp. at 18 (citing *United States v. Salerno*, 108 F.3d 730, 738–39 (7th Cir. 1997)). Specifically, the Salerno court found "the challenged testimony provided evidence of the leadership within the enterprise, the scope of the enterprise, the specialized functions of various crew members, the crew's method of collecting the street tax, the crew's desire to tax independent bookmakers, and perhaps most importantly, Salerno's actual participation in enterprise activities." 108 F.3d at 739.

6    This discussion also addresses the arguments in Elmore's Motion in Limine Number 7 (Dkt. No. 1247).

7    For nine songs, it seeks to introduce lyrics, either through video or audio recordings, and for two songs, it seeks to introduce video recordings without audio. The nine songs are: (1) Neva Luhhed Us, by Sherwin Noriega; (2) Real One, by Sherwin Noriega; (3) Racks, by Sherwin Noriega; (4) Anxious, by Ijeoma Ogbuagu; (5) Poundcake, by Ijeoma Ogbuagu;

United States v. Gordon, Not Reported in Fed. Supp. (2017)
2017 WL 4310712

Case 1:20-cr-00238-JLT-SKO   Document 676   Filed 06/07/23   Page 20 of 21

(6) Big Bank, by Quincy Brooks ("San Quinn"); (7) Ridin Wit Dat 5th, by Tyrice Ivy; (8) 'Strictly Pimpin', by Jaquain Young and Tyrice Ivy; (9) Gangstas on Grove, by William Crawford ("Ya Boy"). And the two songs it seeks to introduce through video without audio are Still in Da Hood, by William Crawford ("Ya Boy") and Loud Thoughts, by Anthony Galasi ("Frost").

8    The song is also credited to another individual, Tyrice Ivy. This ruling is limited to statements made by or co-authored by Young. The government will need to lay a foundation for the admissibility of the statements made by Ivy.

9    To the extent the government seeks to prove the associations of people in the videos separate from the lyrics, I would allow it to introduce still shots from the videos. See discussion infra regarding FRE 403.

10   The government points out that its "[m]otion is intended to place the Court on notice of the issues expected to be addressed by the songs and videos. ... [T]o the extent that the Court has any doubts regarding any foundational issues, the government submits that the Court should hear the foundational evidence for itself prior to excluding any of the proffered evidence." U.S. MiL at 12 n.3.

11   The government repeatedly cites a Second Circuit standard when arguing that the video and audio evidence is not unfairly prejudicial. U.S. MiL at 29; see United States v. Livoti, 196 F.3d 322, 326 (2d Cir. 1999)(finding the evidence did not violate rule 403 because it "did not involve conduct more inflammatory than the charged crime"); United States v. Herron, 2014 WL 1871909, at *4 (E.D.N.Y. May 8, 2014)("In this circuit, evidence is not unduly prejudicial when it is not "more inflammatory than the charged crime[s]." "). That standard is not binding in the Ninth Circuit.

12   Defendants highlight an article that offers empirical evidence that jurors presented with a defendants' violent rap lyrics view the defendant as more likely to have committed murder. Id. (citing Andrea L. Dennis, Poetic (In)Justice? Rap Music Lyrics as Art, Life, and Criminal Evidence, 31 Colum. J.L. & Arts 1, 27-30 (2007)).

13   This discussion also addresses Gordon's MiL Number 5 (Dkt. No. 1239).

14   The first five columns of the following table were extracted from the government's motions in limine. Dkt. No. 1246 at 44–45.

15   This tentative ruling also applies to Gordon's MiL No. 4 (Dkt. No. 1239) and Ferdinand's MiL No. 11 (Dkt. No. 1248).

16   I disagree with Elmore's assessment that the covenant of good faith and fair dealing as applied to his plea agreement concerning this incident requires another violent act to be completed in the future in order for the government to use the facts of this incident against him. The plain language of the plea agreement does not require that "another violent act" be in the future. This conclusion is bolstered by the Sentencing Memorandum in that case, which states that he "wanted to submit a long letter to the Court describing the circumstances of his youth and teenage years as well as his plans for the future, but because the government persists in its position that it wants to indict Mr. Elmore in the future for unspecified crimes, he must limit his statements to the Court." Def. Elmore's Sent. Memo at 2 (Case No. 3:09-cr-01030-CRB, Dkt. No. 116).

17   For ease of reference, I list the challenged statements here:

- Gordon MiL No. 3—Gregory Walker's October 2011 jail calls, Gary Owens' October 2011 prison calls, Vernon Carmichael's December 2013 interview with police

- Elmore MiL No. 3—Young's statements to CI, letters from Elmore to Heard, text messages between Young and purported prostitutes after 7/4/12, text messages involving Ferdinand, other statements

- Elmore MiL No. 5—telephone conversations between Heard and Gary Owens

- Ferdinand MiL No. 8—text messages from Ferdinand

- Ferdinand MiL No. 9—jail calls made by Ferdinand

- Young MiL No. 5—jail calls by Young, co-defendants, and unindicted individuals

United States v. Miller, Not Reported in Fed. Supp. (2017)

2017 WL 4310712

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.