UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>KENNETH BASH, et al,<br><br>　　　　Defendants. | Case No. 1:20-CR-00238-JLT-SKO<br><br>ORDER DENYING MR. BASH'S MOTION FOR SEVERANCE OF THE TRIAL AS TO HIM AND MR. SMITH<br><br>(Doc. 927) |

Kenneth Bash moves to sever his trial, and that of codefendant Derek Smith, from the remaining defendants[1]. He argues that because he was not charged in the murders of Victims 1,2,5,11,12 and 13 and was charged in Count One (a RICO conspiracy including a conspiracy to murder Victim 3 and to stab Victim 8), Count Six (conspiracy to murder Victim 3) and Count Seven (conspiracy to distribute methamphetamine), his trial and Mr. Smiths' should be severed from the remaining defendants. (Doc. 927) For the reasons set forth below, the motion is **DENIED**.

///

---

[1] Mr. Bash also seeks to have Mr. Smith's trial severed as well. He fails to explain how he has standing to seek severance of Mr. Smith's case. On the other hand, two weeks before the hearing on the motion, nearly two weeks after the government opposed the motion and a week after the last brief was filed, Mr. Smith joined in the motion. (Doc. 974) Because Mr. Smith offered no written analysis of the circumstances, the Court presumes he has no objection to being tried with Mr. Bash differences in the charges brought against them.

## I. Background

The government alleges that the "Aryan Brotherhood is a white, race-based gang formed in the California prison system in about 1964 by white inmates who wanted to gain power and authority in prison." Doc. 622 at 2. The AB "is a criminal organization whose members and associates engaged in drug trafficking, theft, and acts involving murder, extortion, burglary, robbery, and assault." *Id*. at 2. According to the government, the purpose of the Aryan Brotherhood is to control illegal activities within the California prison system, to enrich its leaders, members, and associates, to preserve, protect and expand the reach of the AB's power and to threaten and use violence to "keep victims in fear of the AB." (Doc. 622 at 3.) The Aryan Brotherhood does this by authorizing and condoning members and associates to commit criminal acts, by engaging in acts, such as "drug trafficking, theft, robbery, and extortion." *Id*.

In this action, the government has charged Mr. Bash in Counts 1, 6 and 7, and Mr. Smith in Counts 1, 7 and 9 through 12. Count 1 alleges the defendants conspired to participate in a racketeering enterprise, specifically the Aryan Brotherhood. Toward this end, the indictment asserts that Mr. Bash conspired with others to murder Victim 3, that Bash and Smith conspired to rob V-6, in which V-6 was tied up and beaten, that Bash and Smith conspired to commit arson by setting fire to V-7's property, that Bash committed "mail fraud and identity theft to obtain money from California Employment Development Department and others," that Bash and Smith distributed methamphetamine and heroin within Salinas Valley State Prison and that Bash ordered the stabbing of V-8 for violating AB rules. (Doc. 622 at 7-8) Also charged in Count 1 is defendant Johnson, Clement, Weaver, Pitchford, Field, Bannick and Perkins. *Id*. at 5. Indeed, the indictment alleges that the acts set forth in the Counts following Count 1, occurred in furtherance of the racketeering enterprise.

In Count 6, the indictment alleges that Bash and two others, conspired to murder V-3 for the purpose of aiding the enterprise under 18 U.S.C. § 1959(a)(5) [2]. In Count 7 and in Counts 9 through 11, the government alleges that Bash and Smith, respectively, were engaged in drug

---

[2] A Violent Crime in Aid of a Racketeering must have been committed "for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity." 18 U.S.C. § 1959.

2

trafficking activities. *Id*. at 19-22. In Count 11, the government alleges that Smith unlawfully possessed a gun. *Id*. at 20-21.

## II. Analysis

Federal Rule of Evidence 14 provides for the severance of charges or defendants if joinder "appears to prejudice a defendant or the government" and permits separate trials of counts or defendants, or "any other relief that justice requires." The standard for showing prejudice is high. *United States v. Vasquez-Velasco*, 15 F.3d 833, 845 (9th Cir. 1994). When the government has properly indicted defendants jointly, a joint trial is the "preference in the federal system." *Zafiro v. United States*, 506 U.S. 534, 537 (1993). Joint trials "promote efficiency and 'serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'" *Id*. (quoting *Richardson v. Marsh*, 481 U.S. 200, 209 (1987)). A showing of some prejudice is not enough. Rather, the "court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, at 539, emphasis added. Serious risk of harm is shown,

> . . . when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant. For example, evidence of a codefendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant was guilty. When many defendants are tried together in a complex case and they have markedly different degrees of culpability, this risk of prejudice is heightened. See Kotteakos v. United States, 328 U.S. 750, 774-775, 66 S.Ct. 1239, 1252-1253, 90 L.Ed. 1557 (1946). Evidence that is probative of a defendant's guilt but technically admissible only against a codefendant also might present a risk of prejudice. See Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Conversely, a defendant might suffer prejudice if essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial.

"The burden is on the defendant to show 'clear,' 'manifest,' or 'undue' prejudice from a joint trial." *United States v. Mikhel*, 889 F.3d 1003, 1046 (9th Cir. 2018) (quoting *United States v. Polizzi*, 801 F.2d 1543, 1553–54 (9th Cir. 1986)). A defendant:

> must also show violation of one of his substantive rights by reason of the joint trial: unavailability of full cross-examination, lack of opportunity to present an individual defense, denial of Sixth Amendment confrontation rights, lack of separate counsel among defendants with conflicting interests, or failure properly to instruct the jury on the admissibility of evidence as to each defendant.

3

*United States v. Escalante*, 637 F.2d 1197, 1201 (9th Cir. 1980).

### A. The defendant has failed to demonstrate serious prejudice will result if the Court does not grant severance

Mr. Bash argues that except for him and Mr. Smith, the defendants remaining in this case are all charged with murder, making them eligible for the death penalty. (Doc. 927) However, since the filing of the motion, the government has notified the parties that it is not seeking the death penalty in this case. (Doc. 950) In any event, Mr. Bash argues that these other murders are "stand-alone criminal acts" which "have a separate constellation of witnesses to support and/or refute criminal liability. *Id*. at 4.

In taking this position, Mr. Bash ignores the overlap between the evidence expected on Count 1 and the remaining counts. To prove Count 1, the government will be obligated to present the evidence related to the enterprise no matter whether there is one trial or one trial for each defendant. Toward this end, the government has produced thousands of items of discovery, its investigation is ongoing, and the number of witnesses to prove the alleged acts will be extensive. See *United States v. Lewis*, 611 F.3d 1172, 1176 (9th Cir. 2010). Mr. Bash argues that the government need not present the same evidence to prove Count 1, if he and Mr. Smith were tried separately. In making this argument, however, he acknowledges that how the government chooses to prove its case, within the confines of the Rules of Evidence, is a decision for the government.

Moreover, courts agree that "a joint trial is particularly appropriate where the co-defendants are charged with conspiracy, because the concern for judicial efficiency is less likely to be outweighed by possible prejudice to the defendants when much of the same evidence would be admissible against each of them in separate trials." *United States v. Fernandez*, 388 F.3d 1199, 1242 (9th Cir. 2004), as modified, 425 F.3d 1248 (9th Cir. 2005). In *United States v. Varella*, 692 F.2d 1352, 1359 (11th Cir.1982), the court explained, "Congress recognized the utility of multi-defendant trials to effectuate the prompt efficient disposition of criminal justice. It felt that the efficiency and economy of joint trials far outweighed the desirability of granting a severance where the criterion was simply the passage of time." Moreover, a joint trial does not relieve the government of its obligation to prove each defendant's liability beyond a reasonable doubt.

*Zafiro*, 506 U.S. at 540–41.

Finally, "it is well settled that defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." *Zafiro*, at 540. "The inevitable consequence of any joint trial is that the jury will become aware of evidence of one crime while considering a defendant's guilt or innocence of another crime." *United States v. Decoud*, 456 F.3d 996, 1009 (9th Cir. 2006). Only where the "risk of prejudice is high," is the court "more likely" to consider severance but often, "less drastic measures, such as limiting instructions," are sufficient. *Id*. On the other hand, as has been recognized in many other similar racketeering cases, here, "the predicate or underlying crimes alleged are well within the ability of the ordinary juror to understand." *Fernandez*, at 1244.

The Court does not discount the concerns of Mr. Bash and Mr. Smith over trial fairness. However, they have not shown a likelihood that the jury will assume they are guilty based upon evidence presented as to the codefendants, and they have not shown severance is the only solution. The court will give limiting instructions[3] and provide the jury verdict forms—probably one form per defendant—to minimize any confusion. The Court will also permit separate questioning and argument. In short, Mr. Bash and Mr. Smith have failed to meet their burden of establishing serious prejudice if their trial is not severed. *United States v. Zar*, 790 F.3d, 1036, 1043 (10th Cir. 2015).

**ORDER**

For the reasons discussed, the motion to sever is **DENIED**.

IT IS SO ORDERED.

Dated:   **March 19, 2024**

UNITED STATES DISTRICT JUDGE

---

[3] It is well established "juries are presumed to follow their instructions." *Zafiro*, at 540 (quoting Richardson, at 211). The Court recognizes that in some circumstances, such as where a codefendant's testimony will inculpate a defendant, limiting instructions may be inadequate. *Bruton v. United States*, 391 U.S. 123, 137 (1968).